RECEIVED
SDNY PRO SE OFFICE

UNITED STATES DISTRICT COURT

2020 OCT 14  AM 11: 02

SOUTHERN DISTRICT OF NEW YORK

ALEXANDER WILLIAMS JR

PLAINTIFF(S)

-AGAINST-

THE CITY OF NEW YORK, ADW ELYN RIVERA
SHEILD NO. 576, CAPTIN JOHN HERNANDEZ
SHEILD NO. 1806, DR. DEBRA MAYERS,IRA
GORNISH,TERESA CUADRA, HESTER MOULTON ,
BESSIE FLORES-CLEMETE, JUSTIN WILSON,
LAURA HUNT, CAROLYN DICKIE,CORRECTIONAL
HEALTH SERVICES

DEFENDANT(S)

NO.  20-CIV-0516
(TO BE FILED OUT BY CLERK)

42 U.S.C.  § 1983
COMPLAINT (PRISONER)

DO YOU WANT A TRIAL JURY?
☒ YES       [] NO

AMENDMENT VERSION

I.              LEGAL BASIS FOR CLAIM:
State below the federal legal basis for claim, if known, this form is designed
primarily for prisoners challenging the constitutionality of their conditions
of confinement; Those claims are often brought under U.S.C. §1983 (against
state, county, or municipal defendants or in a "BIVENS" action (against
federal defendants).

☒              VIOLATION OF MY FEDERAL CONSTITUTIONAL RIGHTS

[]              OTHER:

II.             PLAINTIFF INFORMATION
Each plaintiff must provide the following  information.  Attach extra pages
if necessary.

FIRST NAME                    MIDDLE INITIAL              LAST NAME


Prisoner Id# ( if you have previousuly been in another agency's custody,
please specify each agency and  the ID number [such as your din or NYSID]
under which you were held )


MANHATTAN DETENTION COMPLEX
CURRENT PLACE OF DETENTION

1

**125 WHITE STREET**
Institutional address

| NEW YORK | NEW YORK | 10013 |
|---|---|---|
| COUNTY, CITY | State | Zip Code |

## III.      PRISONER STATUS:
Indicate below whether you are a prisoner or other confined person:

[X]        Pretrial detainee

[]        Civilly Committed detainee

[]        Immigration detainee

[]        Convicted and Sentence prisoner

[]        Other: _____

## IV.      DEFENDANT(S) INFORMATION:
To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on defendant(s). Make sure that the defendant listed below are identical to those listed in the caption. Attach additional pages as necessary.

DEFENDANT 1:      The City Of New York
                 FIRST NAME                    LAST NAME           SHEILD

City Of New York
CURRENT JOB TITLE ( OR OTHER IDENTIFYING INFORMATION )

100 CHURCH STREET
CURRENT WORK ADDRESS

| NEW YORK | NEW YORK | 10007 |
|---|---|---|
| COUNTY, CITY | STATE | ZIP CODE |

DEFENDANT 2: ELYN                          RIVERA              576
            FIRST NAME                    LAST NAME           SHEILD#

ASSISTANT DEPUTY WARDEN
CURRENT JOB TITLE ( OR OTHER IDENTIFYING INFORMATION )

66-26   Metropolitan      ave.
CURRENT WORK ADDRESS

| QUEENS | NY | 11379 |
|---|---|---|
| COUNTY, CITY | STATE | ZIP CODE |

DEFENDANT 3: JOHN                    HERNANDEZ              1806
             FIRST NAME              LAST NAME            SHEILD#
             SERCURITY CAPTIN
             CURRENT JOB TITLE ( OR OTHER IDENTIFYING INFORMATION )
             125 WHITE  STREET
             CURRENT WORK ADDRESS
             NEW YORK NY              NY                   10013
             COUNTY,CITY             STATE                ZIP CODE

DEFENDANT 4: DEBRA                   MAYERS
             FIRST NAME              LAST NAME          SHEILD #
             FACILITY DOCTOR
             CURRENT JOB TITLE ( OR OTHER IDENTIFYING INFORMATION )
             125 WHITE STREET
             CURRENT WORK ADDRESS
             @ NEW YORK               NY                   10013
             COUNTY, CITY            STATE                ZIP CODE

DEFENDANT 5: IRA                     GORNISH
             FIRST ANME              LAST NAME              SHEILD#
             FACILITY DOCTOR
             CURRENT JOB TITLE  ( OR OTHER IDENTIFYING INFORMATION )
             125 WHITE STREET
             CURRENT WORK ADDRESS
             NEW YORK                 NY                   10013
             COUNTY, CITY            STATE                ZIP CODE

DEFENDNAT 6: TERESA                  CUADRA
             FIRST NAME              LAST NAME              SHEILD#
             DOCTOR FOR FACILITY
             CURRENT WORK TITLE ( OR OTHER IDENTIFYING INFORMATION )
             125 WHITE STREET
             CURRENT WORK ADDRESS
             NEW YORK                 NY                   10013
             COUNTY, CITRY           STATE                ZIP CODE

DEFENDANT 7: HESTER                  MOULTON
             FIRST ANME              LAST NAME              SHEILD#
             FACILITY DOCTOR
             CURRENT JOB TITLE ( OR OTHER IDENTIFYING INFORMATION )
             125 WHITE STREET
             CURRENT WORK ADDRESS
             NEW YORK                 NEW YORK             10013
             COUNTY, CITY            STATE                ZIP CODE

DEFENDANT 8 BESSIE KKØRKX            FLORES-CLEMENTE
             FIRST ANME              LAST NAME            SHEILD
             FACILITY  DOCTOR
             CURRENT JOB TITLE  ( OR OTHER IDENTIFYING INFORMATION )
             125 WHITE STREET
             WORK ADDRESS
             NEW YORK                 NY                   10013
             COUNTY, CITY            STATE                ZIP CODE  XHKXKK#

3

DEFENDANT 9: JUSTIN                    WILSON
        FIRST NAME            LAST NAME                    SHEILD #
        FACILITY DOCTOR
        CURRENT JOB TITLE ( OR OTHER IDENTIFYING INFORMATION )
        125 WHIUE STREET
        CURRENT WORK ADDRESS
        NEW YORK                      NY            10013
        COUNTY, CITY                  STATE         ZIP CODE

DEFENDANT 10: LAURA                    HUNT
        FIRST NAME            LAST NAME                    SHEILD#
        FACILITY DOCTOR
        CURRENT JOB TITLE ( OR OTHER IDENTIFYING INFORMATION )
        125 WHITE STREET
        CURRENT WORK ADDRESS
        NEW YORK                      NY            10013
        COUNTY, CITY                  STATE         ZIP CODE

DEFENDANT 11: CAROLYN                  DICKIE
        FIRST NAME            LAST NAME                    SHEILD #
        FACILITY DOCTOR
        CURRENT JOB TITLE ( OR OTHER IDENTIFING INFORMATION )
        125 WHITE STREET
        CURRENT WORK ADDRESS
        NEW YORK                      NY            10013
        COUNTY, CITY                  STATE         ZIP CODE

DEFENDANT 12: CORRECTIONAL HEALTH SERVICES
        FIRST NAME            LAST NAME                    SHEILD #
        MEDICAL DEPT AT JAIL
        CURRENT JOB TITLE ( OR OTHER IDENTIFYING INFORMATION )
        125 WORTH STREET
        CURRENT WORK ADDRESS
        NEW YORK                      NY            10013
        COUNTY, CITY                  STATE         ZIP CODE

V.        STATEMENT OF CLAIM:

PLACES OF OCCURRENCE:  MANHATTAN DETENTION COMPLEX

DATE(S) OF OCCURRENCE: APRIL 2019 - DEC 2019

## FACTS:

State here briefly the facts that support your case. Describe what happen,
how you were harmed, and how each defendant was personally involved in
the alleged wrongful action. Attach additional pages as nescessary.

4

## SICK CALL ISSUES / FACTORS

1.　　　The plaintiff was transferred to the Manhattan Detention Complex on Jan 18 2019 from The Brooklyn deetntion Center.

2.　　　durring the first three months or so anytime that he requested sick call he was taken out of his cell which was cell (7) on housing unit 9North and taken to the triage room on the ninth floor to be examine and have his vitals taken while he explain to the doctor at the time what his mediaal complaint may have been.

3.　　　On or about April 22 2019 in between the time of 8:30 am and 12:00 noon the plaintiff requested sick call  while the doctor  **CAROLYN DICKIE**  was on the unit inquiring who needed to be seen.  When the plaintiff informed the doctor that he needed sick call instead of taking him to the triage room right outside of his housing unit; doctor **DICKIE** opted to discuss with the plaintiff his medical complaint while going over his chart in the presence of the correctioanl officer escort that was with her, the officer that was working the housing unit and all the other  inmates that were on their doors listening awaiting to request medical attention.

4.　　　On May 25 2019  between the hours of 8:30 am and 12:00 noon the plaintiff requested to be seen by medicvla durring sick call rounds. A doctor **LAURA HUNT**  was the doctor that day and once the plaintiff  informed her that he neded to be seen my medical; she opned his chart up and began to discuss the issues that he has in regrads to the medical attention that he was requesting; she informed the plaintiff that she would prescribe medication for his on-going mediaal issue and discussion that took place infront of the escorting correctionla officer that she was with and the housing unit officer as well as the other inmates that were awaiting sick call also.

5.　　　On May 26 2019  between the hours of  8:30 am and 12:00 noon

doctor  **JUSTIN WILSON** was conducting sick call on housing unit 9 north and when he got to cell 7 the plaintiff requested to be seen and the plaintiff then attemptd to  stop the doctor when he began to discuss the plaintiff medical history in regrads to the complaint that he was making on that day; the doctor informed  the plaintiff that he would prescibe medical but that the trianage room was locked and that they didnt have the keys to be able to examine  him. The doctor stated all of this while still speaking about the plaintiff medical history in front of the other inmates that were awaiting to ask for sick call and the corectional officer that was escorting him as well as the housing unit corectional officer on that day..

6          On  June 26 2019 doctor **BESSIE FLORES-CLEMENTE** was on the housing unit around the hours of  8:30 am and 12:00 noon doing sick call for the unit that the plaintiff was housed in. When the plaintiff  asked why isnt he being examine in regrads to his medical complaint and why was hois medical history being read out aloud instead of taking himinto the triage room where he was getting examined before, the doctor told the plaintiff that he was making things  difficult and that she didnt have to even come upstairs to afford them,"meaning the plaintiffand all the inmates in his housing unit, sick call; the plaintiff explained that he was in pain and the doctor briefly  ran down the plaintiff history for the issue that he was complaining about and informed him that she would would prescibe medication. This conversati was not spoken in front of the corectional officer that escorted her but it was in the presenen where the inmates on the unit heard what the plaintiff issue was and the housing unit oficer on that day.

7.          On July 2nd 2019 doctor **IRA GORNISH**  entered the unit around 8:30 am and 12:00 noon to conduct sick call. When he got to the plaintiff cell he  stated that  he didnt need to read the medical history out  and that he knew that the  palintiff isue was and that he would prescibe medication

to address his issue. The plaintiff asked to be examined and have his vitals taken because he didnt feel top well and the doctor told him to drink more water and do excersies and walked off to the next inmate.

8.        On July 3rd 2019 doctor  **HESTER MOULTON** conducted sick call rounds in housing unit 9 north and when she stepped up to the plaintiff cell 7 she attempted to go over the medical history in a lower tone  and was not scuessful  because once she was gone the inmate in 12 cell aksed the plaintiff if he was going for foot surgey cause he heard the doctor say that the plaintiff pain was on-going issue for years now; the discussion between the plaintiff and the doctor took place in ear shot of the inamtes in the hosuing unit as well as the escorting correctional oofcer and the housing unit o6ficer.

9.        On july 12th 2019  the plaintiff  had  a mental health doctor visit him while he was  in his cell 7 .; doctor **GABRIELIA SANDOVAL**  walked up to the plaintiff cell  and spoked with the plaintiff in regards to his mental health matter while in ear shot of the housing unit correctional officer and the inamtes on housing unit.

10.       On July 29th 2019 around 8:30 am - 12;00 noon while conducting sick call on housing unit 9 north doctorr **TERESA CAUDRA** approched the plaintiff when he called her over to his cell door to explained that he needed to be examine in regards to feeling pain and feeling sick. The doctor while in ear shot of the housing area offceir, the escorting officer and other inamtes on the hoosing unit briefly went over the plaintiff's medical history and explained that the only thing she could do was proscibe him medication for his situation.

11.       On July 30 2019 when doctor **IRA GORNISH** CAME to the plaintiff's housing unit for **sick** call  around  8:30 am - 12;00 noon, when he got to the  plaintiff cell door he was already saying i already know you are in pain for your  foot I am not going to examine you but I will document

it and order you some pain killers; when the plaintiff voiced that he was
uncomfortable with him always discussing his medical matter out loud when
he comes to the unit the doctor told him "NOT TO COME TO JAIL", all while
in ear shot of the housing unit officer, the escorting correctional offcier
as well as the inmates in the housing unit.

12.      On August 14 2019 around 8:30 am - 12:00 noon doctor **IRA GORNISH**
approched the  plaintiff cell when he called him over to request sick call,
before he was near the plaintiff cell he began to go over the plaintiff's
medical chart that he always has and stated "I KNOW THAT I PUT YOU IN TO
BE SEEN", he then explained that the plaintiff's pain is due to foot denfornitit
and he may ned surgey done. This conversation / complaint/ sick call request
took place while in ear shot of the correctional officer that escort the
doctors when doing sick call rounds, the housing unit coprrectional offciers
and inmates in the housing unit.

13.      On August 20 2019  when the doctor **"NAME UNKNOWN"**  conducted
sick call rounds in the plaintiff's housing unit. Whne the doctor got infront
of the plaintiff door he also began to openly dicuss the plaintiff medical
chart in ear shot of the escorting offcier, the housing unit officer and
inmates in the housing unit around 8:30 am - 12:00 nθon. The plaintiff
expressed to the doctor his medical complaint and also explained that he
was uncomfortable with the way that medical was being offered when the
triage room was ten feet away from the housing unit.

14.      On September 12 2019 around 8:30 am - 12:00 noon doctor **IRA GORNISH**
conducted sick call rounds on houning unit 9 north and again when he approached
the plaintiff's cell it seem as if his voice got louder as he explained
to the plaintiff that he seemed to always be sick for one reason or another;
when the plaintiff requsted that his vitals be taken and he be examined
the doctor said you will be fine and that he would order him something
and moved on to the next inmate requesting medical care.

15.     On September 24 2019 doctor **DEBRA MAYERS** conducted sick call
rounds in housing unit 9 north around 8:30 am - 12:00 noon and when she
got to the plaintiff's cell which is cell 7, she began to read the plaintiffs
medicla recors from his chart that she had in her  hands. When the plaintiff
explained that he was in pain and needed his vital taken she responded
to him informing him that she didnt have the keys to the triage room but
would note  his medical complaint. When she read his medical chart to him
it was in ear shot of the inmates on the houisng unit, the offcier that
was escorting her and the housing unit officer also.

16.     **EXHIBIT -A**  is the grievance that the plaintiff  filed in regrads
to  the manner in which his medical information was being exspoed  as well
as  the fact that he was being denied  the right to speak privately and
be examined when requesting  sick call.

## INADEQUATE MEDICAL TREATMENT / MAPRACTICE FACTORS

17.     On Feb 15 2019 the plaintiff was seen  by doctor **EDITH OGBENNA**
durring the sick call  and he complained of stomach pain. The  plaintiff
informed the  doctor that he had been having this pain for two 2x weeks
prior to the medical visit that day. The plaintiff was exameaned in the
triage room  and infommed that the pain he was  experincing was called
EPIGASTRIC PAIN  **SEE EXHIBIT - B.** The plaintiff was prescribed Omerazole
**Ca**psule delayed release, 20 mg, total dose: 20 mg, orally, daily, 30 days.

18.     On feb 22 2019 the plaintiff was seen for a follow  up of his
complaint for sick call made on feb 15 2019 by a doctor **BESSIE FLORES-CLEMENTE**
were he explained  theat the medication he was givenx  was not working
for the pain that he  was feeling  and he was told that the medication
would end on March 17 2019 and to give it the opportunity  to work. **SEE
EXHIBIT - C.**

19.     On March 2 2019 the plaintiff was seen by doctor **GLORIA INHENACHO** durring the housing unit sick  call where he complained about ABDOMINAL PAIN; vomiting. The plaintiff was traken to the triage room and examined while explaining that his stoamch was burning, that he was constaly experiencing the feeling of nausea and vomiting any solid food that he eat. The doctor presciled Zantac 300mg PO STAT and told the plaintiff that miving forward he would be reciving Zantac tablet, 150 mg total dose 2 tabs, orally, stat and that instead of the 20 mg of Omeprazole he would be raised to 40 mg of Omeprazole orally daily for 30 days. **SEE EXHIBIT -D.**

20.     On March 7 2019 durring the sick call procedure on 9 north the plaintiff was seen by doctor **BESSIE FLORES-CLEMENTE** for a second time where he agin complained that the medication he was taking was not helping his pain. This time  the plaintiff was informed  that the feeling that he was experincing was actually haertburnand at that point he was informed that he would be taking Zantac 150 mg twice 2x a day for 30 days. The plaintiff was also informed that on March 23 2019 he was shceduled to have an annual physical were his stomach pain would be further asessed. **SEE EXHIBIT - E.**

21.     On March 12 2019 the plaintiff was seen durring sick call by doctor **IRA GORNISH**. This date he was exmained in the traige room and after the examiniation was told by the doctor that he was suffering from **GERD** (GASTRO-ESPOPHAGEAL REFLUX DISEASE)  ans that it was normal and that there was nothing that could be done about the matter other then **thex**  plaintiff continuation of ZANTAC. **SEE EXHIBIT - F.**

22.     On March 23rd 2020 the plaintiff was seen and examined at the facility clinic for an annual physical and cleared with having  no medical issues. The matter of his constant stomach pain was never addressed any further.

22.      On dec 25 2019 the plaintiff complained of having serve stoamch

pains while being locked inside of his cell. A medical emergency was called

and the plaintiff was seen by a doctor **SPITZ** at the facility clinic area

cubicle number 2. The doctor gave the plaintiff TYLENOL and informed him

that there wasnt much more that he could do for him and that maybe it

was from something that he eat.

23.      As the plaintiff was being escorted back to his housing unit

by CO SIMON JR, as he entered the housing unit the plaintiff collapse and

fainted.. An medical emergency was called and the plaintiff was awoken

by medical staff using the aminia stick by his nose.

24.      The plaintiff was again taken to the facility clinic area this

time he was placed in cubicle number 3 and told to  stay there for a few

hours for observational purposes before being returned  to his cell later

on that night.

25.      On Dec 29 2019 the plaintiff while locked in his cell began tp

experience shooting pain, vomiting and lost of breath to the point were

a medical emergency was called.

26.      Upon arriving to his the unit the plaintiff was carried out of

his cell by CO  HARRISON and placed in a medical garney. As soon as he

gain his breath he began to vomit agin in a projectile fashion. After vomiting

he wqas placed on the oxygen tank to ensure that he was reciving air and

was taken down  to the fcaility medical clinic area and placed in cubicle

number 2 while the doctor contacted EMS so that the plaintiff could be

transported to an out-side hospital.

27.      In review of   **EXHIBIT - G**  you will find the medical records

of the plaintiff's from the trip taken that night to New York Presbyterian

hospital. After multiple examination it was learned that the plaintiff

had numerous gallstones as followed: (1) in the size of being 4.0 cm; (2) one of being in the size of 2.7 cm; (3) and one of being in the size of 2.9 cm. The plaintiff had biliary ductal dilatation and his abdominal wall contained a hernia.

28.      The plaintiff was admitted and seen numerous times by the hospital surgery team and informed that his gallbladder needed to be removed surgically but that unfortunately the gallbladder was inflamed and infected and that he would need to sety for a day or two hooked up to iv fluids and antibiotics to see if the infection and inflammtion would leave so that the surgery could commence.

29.      After two days he was released back to the facility and prescibed Augentin for two weeks 2x 14 days until the infection and inflammtion left and then he would be scheduled for surgey to remove his gallbladder. The plaintiff was placed on a low fat diet also., due to being diagnosed with having **ACUTE CHOLECYSTITS AND A HERNIA.**

## PLAINTIFF'S PRIVACY RIGHT ISSUES / FACTORS:

30.      On March 2 2019 the plaintiff was seen by the visiting podiatrist in the facility clinic area in cubicle number 2 when he noticed that the camera above seemed as if it was zooming in on him durcing the time that he was getting examined.

31.      On May 20 2019 when being seen in the saem cubicle number two (2) by the visiting podiatrist the plaintiff agian noticed that the camera above seemed to be zooming in on him when he was being examined.

32.      On june 3 2019 while being sen by the visiting podiatrist in cubicle number 2, the plaintiff looked up and saw that the camrea was zooming in on him as he was being   k examined.

33.     On March 23 2019 while the plaintiff was being examined for his annual physical check up  while laying in the bed area in cubicle number 2 he noticed the feeling of being watched and looked up and saw that the camera above was zooming in on him as he was taking his clothes off  to get examined.

34.     On  Spotember  25 2019 durcing a follow up for a slip and fall imnjury the plaintiff was in the facility clinic area cubicle 3 i belive and again while being examined he noticed that the camera lense had began to zoom in as he was taking his clothes off.

35.     On December  25 2019  plaintiff was exmained in the fcaility clinci area cubicle number 2 when he first went down down to a medical enercy  and was givenk  TYLENOL by doctor SPITZ, while he was being exmamined he looked and noticed that the camera above lense had began to zoom in and focus on him as he was being seen.

36.     On Decemeber 25 2019 after he fainbed and was returned to the fcaility clinic area he purposely asked to be placed and exmmenied in cucbilce number 3 because of the camera that zoomed into number 2. Once he was laid in the examination bed in cicbile number 3 as he was being examined he realized that the camera that sat on the wall next to a mrior between cubicles number 1 and 2 lense began to focus in on him as he was getting undressed to be examined.

## RETALIATION FACTORS :

37.     Since complaing about the medical care that he has not been reciving the plaintiff has been retaliated aginst by the defendats and other  other staff  due to his litigations in this matter and other cases.

38.     On December 31 2019 the plaintiff complained that the facility was denying him the correct diet in preparations of  the surgey for gallbladder removal. The response stated that he was on the Therapeutic list and as

of the date of this filling of the amendment that plaintiff diet has still not been corrected; even though the medical staff as well as the facility is aware that the regula diet is what was the cause of gallbladder. **SEE EXHIBIT - H.**

39.      On Jan 21 2020 when returning from court the plaintiff was forced to sit in the back of a transportation van fot over an hour and half after a medical emergency being called due to sharp pains and vomiting  in his stomach. The plaintiff was hand cuffed and chained for the period of this time as well. **SEE EXHIBIT - I.**

40.      On March 9 2020 the plaintiff began to experinee signs of flu and sick-ness which lead to him throwing up and spitting bllod while locked in the cell in housing unit 9 north. At this time the facility medical staff  were not treating him out of acts of being malicous and retalitory . **SEE EXHIBIT - J.** His complaint was forwarded to medical divison for review.

41.      On March 12 and March 13 of 2020 the plaintiff complained to the facility officals that medical staff had been refusing to conduct sick call on housing unit 9 north due to the filing of a 1983 buy the plaintiff and serveral other inmates. The plaintiff was denied sick call even after after explaining the sickness feelings he were expecieucing , **SEE EXHIBIT - K.**

42.      On March  or about  March 25 2020 the plaintiff began to complain that that facility was failing to propecl enact preventive measures to protect him from  the racnsmision of the COVID -19 that was plaugging the city. The facility  was not issuing masks to the plaintiff nor the staff that was **working** the housing unit. The facility was not issuing achol pads and instructing correctional officers to clean the phones on housing unit 9 north, knowing that the inmates  shared  the phone daily through the recall officer who conducted calls by way of passing the phone from cell to cell for the inmates.  **SEE EXHIBIT-L.**

43.      On July 18 2020 the plaintiff's defense  attorney wrote and sent a letter to NYC DEPARTMENT CORRECTIONS, LEGAL DEPARTMENT LOCATED  @ 75-20  ASTORIA BLVD, EAST FLMHURST, NY 11370;  addressing the plaintiff's denial of medical attention and the fact that he was being singled out and retaliated aginst by an assistant deputy warden at the jail due to his civil litigation and compliants. SEE EXHIBIT -  M.

42.      Submitted with the letter from the plaintiff's defense attorney Julie A. Clark was hereto attched as EXHIBIT - N 311 complaints that were made by the plaintiff's wfie Crystal Williams  addreesing the plaintiff's denial of medical attention.

43.      On or about  March 30 2020 the plaintiff  was denied medical attention to the point where his  second defendse counsel Jeffery Chabrove had to call the jail and speak with the tour commander dep.MARIA  and hosuing area captin  LYBIRD, to address and complain that his client ebing the plaintiff had  a respitory issue history and that he needed medical assistance. This act lead to the plaintiff being tested for tempature whcih ened up being  102.8 were he was rushed to RIKER ISLAND WST FACILITY  FOR observation and coronavirus testing. It was lead that the plaintiff had a sickness called HYSMOTIA, and not COVID-19.

44.      Until this date the only time that sick call is offered to the plaintiff is on the weekends by doictors that were not anued herein as defenduats; this has been that case since eaxtly March 12 2020.

### AS AND FOR THE FIRST CUASE OF ACTION FOR
### CONSTITUTIONAL VIOLATIONS THAT FALL UNDER
### UNDER 42 U.S.C § 1983

45.      The plaintiff, ALEXANDER WILLIASM JR, repeats, reiterates and realleges each and every paragrphg of this complaint and further alleges:

46.     The level or negligents and denial of medical care  by the defendants
CITY OF NEW YORK ; ADW ELYN RIVERA; CAPTIN J HERNANDEZ SHEILD NO 1806;
DR. DEBRA MAYERS; IRA GORNISH; TERESA CUADRA; HESTER MOULTON; BESSIE FLORES-
CLEMENTE; JUSTIN WILSON; LAURA HUNT; CAROLYN DICKIE; CORRECTIONAL HEALTH
SERVICES;  was objectively unreasonable and in violation of the plaintiff
ALEXANDER WILLIAMS JR'S  constitutional rights.

47.     The above mention defendants in ¶(46)  has established a patterned
of retaliation through way of denying the plaintiff adequate medical care
and instituting  new polices that enable the plaintiff to further request
medical assistnt through way of sick call by creating a system and instructing
the plaintiff to call medical via telephone to request sick call as seen
in EXHIBIT - O, when  it is known that the plaintiff is housed in a court
order lock down housing unit and has his phone and pin restrcited to where
he may only call the numbers that the court approved  and that are listed
on the recall officer / facility C.O.L.D. sheet.

48.     THE Courts have long decied in SPICER V. WILLIAMSON, 191 N.C.
487, 490, 132 S.E. 291, 293 (1926), that even as a pre-trail detainee atht
the U.S. Const requires that the jails provide  pre-trail detainees with
adequate medical care. Not examining the plaintiff when complaining of
sickness and having a pre-existing medical sickness that is documented
in his medical rcords   is support of this claim.

## AS AND FOR THE SECOND CAUSE OF ACTION FOR
## MUNICIPAL LIABILITY

49.     Plaintiff ALEXANDER WILLIAMS JR  REPeats, reiterates, and realleges;
eadh and every paragraph of this complaint and further alleges:

50.     Defendant(s) CITY OF NEW YORK, while acting under color of state
law, engaged in a conduct that constituted a custom, usage, practice, procedure

or rule of the respective municipality/authority, which is forbidden by the Const of the United States.

51.     The aformention customs, polices, usages, practices, rules used by the defendnts CITY OF NEW YORK include, but were not limited to, wrongfully instituting  a policy that is in conflcit with the  following polices already set by NYC Board of Coorects; § CONFIDENTIALITY, 2-07 (A)(B)  AND  § 3-01 SERVICE GOALS AND PURPOSES, (A)(1 - 2) (B)(; as well as the polices mentioned herein EXHIBIT - O, where as the plaintiff only being able to request sick call by way of a phone when the defendnat CITY OF NEW YORK  IS AWARE OF THE PLAIntiff's  telephone restrictions due to the hosuing area he is placed in .

52.     That the foregoing explained conduct was instituted in efforts to target the Plaintiff ALEXANDER WILLIAMS JR  FOR prior complaints against the defendnat  CITY OF NEW YORK  and its employees.

53.     The foregoing customs, poblices, practices, procedures and rules of the CITY OF NEW YORK AND CORRECTIONAL HEALTH SERVICES were the direct and proimate cause of the Const Violatios suffered by the plaintiff ALEXCANDER WILLIAMS JR; as alleged herein.

54.     The foregoing customs, polices, usages, practices, procedures and rules OF THE CITY OF NEW YORK AND CORRECTIONAL HEALTH SERVICES were  the moving force behind the  Const violations suffered by plaintiff  ALEXANDER WILLIAMS JR  AS alleged herein.

55.     Defendants CITY OF NEW YORK, while acting under the color of state and federal nlw, were directly and actively involved in violating the aplintiff ALEXANDER WILLIAMS JR 's Const Rights.

56.     All of the foregoing acts by  Defendnats CITY OF NEW YORK, its agents, servants and/or employees, depreived Plaintiff ALEXANDER WILLIAMS

JR of federally protected rights including but not limited to , the right:

(a) To be free from unwanted/unwarranted malious retalition

(b) To be free from cruel and unusual punishment

(c) To  recieve equal protection under the law

(d) To be given adequate medical care and/or/treatement

(f) To the right to privacy in  medical information  and medical examination.

## AS AND FOR THE THIRD CAUSE OF ACTION FOR
## VIOLATION OF DUE PROCESS & FOURTEENTH AMENDMENT

57.      The plaintiff ALEXANDER WILLIAMS JR, repeats, reiterates, and realleges each and every paragraph of this complaint and further alleges:

58.      Defendant(s) CITY OF NEW YORK; ADW ELYN RIVERA; CAPTIN J HERNENDEZ SHILED NO 1806; DR DEBRA MAYERS; IRA GORNISH; TERESA CUADRA; HESTER MOULTON; BESSIE FLORES-CLEMENTE; JUSTIN WILSON; LAURA HUNT; CAROLYN DICKIE; CORRECTIONAL HEALTH SERVICES;  was objectively unreasonable and in violation of the Plaintiff ALEXANDER WILLIAMS JR'S  Const Rights.

59.      The above mentioned defendants in paragraphn 58 has  established a patterned of violation through way of violation of the plaintiff's Due Process Rights afforded to pre-trial detainess and established by that of the courts in  BENJAMIN V. FRASER, 343 F.3d 35, 49 (2d CIR. 2003); SEE ALSO CITY OF REVERS V. MASS. GEN HOSP., 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L.Ed 2d 605 (1983).

60.      WHILE acting under color of law the defendnats named herein in paragraph 58, engaged in a conduct where the plaintiff ALEXANDER WILLIAMS JR , righht to privacy when dealing with medical records, mental health records, medical information, mental health information and medical examination when the plaintiff was examined in an area for medical reasons that was and still is  in an area that is/can be/ and unlawfully  being monitored

and/or recorded by a third party without consent from the plaintiff and/or without giving plaintiff option to refuse and/or without plaintiff knowledge.

61.      The Courts established in  JORDAN V DOE (1994, CA11 Fla) 38 F.3d 1599, 8 FLW Fed C 829 (Abrogated as stated in TOMBERLIN V CLARK(2014, ND Ala)(2014 US Dist LEXIS 20344),  conditions in which pretial detainees are confined  are scutinized under Due Process Clauses of 5th and 14th Amendmenets; in regrads to providing pretrail detainees with such basic necessities as food, living space, MEDICAL CARE, is a minimum standard allowed by Due Process;  and it is the plaintiff believth that the defendants nameherin  did engage in an activity that lead to the violation of the protected rights stated under this statue but not limited to any othert violations that the court may deem taken place.

62.      It is well establish that the medical   privacy of anyone is deemed   private in nature  as in the facility allowing the plaintiff to be  monitored recorded and/or examined under this type of condition is a violation whereas the facility is a jail under the  CITY OF NEW YORK  MUNICIPALITY just as Rikers Island  jails as well as the Hoopitals within the jurisdiction of the CITY OF NEW YORK  where they medical infomation and medical examined in city based hospitals and the other Jails on Rikers island are nopx not  set up in a fashion where the patients being examined in city hospitals are recorded by camera or viewed by camera adn as the same for the detainees being medically examine in the jails on Rikers Island wheras they are not recored and/or viewed by camera when they are in area where that they are naked, medical records are in view, and/or when discusting medical issues and pre-existing medical sichoesses.

63.      All of the foregoing acts by the defendants name herein paragraph 57 did deprive plaintiff ALEXANDER WILLIAMS JR of rights protected under Due Process Clause of the Fourteenth Amend.

## AS AND FOR THE FOURTH CAUSE OF ACTION FOR
## NEGLIGENT HIRING AND RETENTION

64.    The plaintiff ALEXANDER WILLIAMS JR repeats, reiterates, and realleges each and every paragraph of this complaint and further alleges:

65.    Defendant(s) CITY OF NEW YORK was careless and reckless in hiring and retaining as for its employees including but not limited to the defendants named as being; ADW FLYN RIVERA; CRPTIN J HERNANDEZ SHEILD NO 1806; DR DEBRA MAYERS; IRA GORNISH; TERESA CAUDRA; HESTER MOULTON; BESSIE FLORES-CLEMENTE; JUSTIN WILSON; LAURA HUNT; CAROLYN DICKIE; CORRECTIONAL HEALTH SERVICES, who are responsible for creating, using, implementing polices that are in conflict with minimum standards; and that said defendants CITY OF NEW YORK failed to execersie due care and caution in its hiring practices, and in particular, in hiring the employees mentioned above who lacked the mental capacity and ability to function as employees of defendants CITY OF NEW YORK; in that the defendants  CITY OF NEW YORK  lacked the experience, deportment  and ability to be employeed by the CITY OF NEW YORK; in that  the defendnats employees lacked the maturity, sensibility and intelligence to be employyed by the CITY OF NEW YORK ; in that the defendnats CITY OF NEW YORK knew of the lack of the ability, experince, deportment and manurity of said employees when they hired them to be employees; and that defendants ciTY OF NEW YORK ,its agents, servants and/or employees were otherwise careless, negligents and reckless.

66.    Defendnats CITY OF NEW YORK, knew or should have known in the execersine of reasonable care, the propensities of its employees, agents, servants and/or staff, to engage in the wrongful conduct heretofore alleged in this complaint.

## AS AND FOR THE FIVTH CAUSE OF ACTION FOR
### NEGLIGENT TRAINING AND SUUPERVISION

67.      Plaintiff **ALEXANDER WILLIAMS JR**, repeats, reiterates, and realleges each and every paragraph of this compliant and further alleges:

68.      The failure of the Defendnats **CITY OF NEW YORK**  TO adequately train, supervise, discipline or in any way control the behavior and acts of its agents, servants and/or  employee, in the execercise of thier employement functions, and the failure to enforce the laws of the State of New York and the regualtion and minimum standards of NYC Depart Of Corrs is evidence of the reckless lack of cautious regrads for the rights of all inmates including the plaintiff **ALEXANDER WILLIAMS JR** – Further, the defendnats **CITY OF NEW YORK**  exhibited a lack of that degree of due care which prodent and reasonable individuals would show.

69.      The failure of the defendnats **CITY OF NEW YORK** to train, supervise, discipline or in any other way control its agents, staff, servants and/or employees, in the exercise of their employement functions and the failure to enforce the laws of the State of New York and the reguakltions and minimum standrads of NYC Department of Corrections, was carried out willfully, wantonly, malicously and with suej reckless disregards for the consequnces as to display a consciuos disregeads for the  dangers of harm and injury to all the inmates of the Manhatten  detention Complex, including the plaintiff **ALEXANDER WILLIAMS JR**.


## AS AND FOR THE SIXITH CAUSE OF ACTION FOR
### RESPONDEAT SUPERIOR LIABILITY

70.      Plaintiff **ALEXANDER WILLIAMS JR**, REpeats, reiterates, and realleges each and every paragraph of this complaint and fuirther alleges:

71.     Deefendnats **CITY OF NEW YORK** is vicaiosuly  laible for the acts of its employees and agents who were on duty and acting in the scope of their employement whne they engaged in the wrongfully conduct descibed herein.

72.     As a result the foregoing the Plaintiff **ALEXANDER WILLIAMS JR** IS ENTITLED to compensatory and punitive damages request herein this complaint.

## INJUIRES

73.     As a results of the defendnats and their actions the Plaintiff **ALEXANDER WILLIAMS JR** rights were vioalted as mention below but not limited to those below:

A.      8TH AMEND.
B.      CREATING & MAINTAING CUSTOM POLICY
C.      5TH AMEND.
D.      14THS  AMEND.
E.      4TH AMEND.
F.      6TH AMEND.
G.      DEFIENT MANAGEMENT
H.      SUPERIOR RESPONDAET
I.      FAILURE TO TRAIN
J.      FAILURE TO SUOPERVISON/SUPERVISE

## RELIEF SOUGHT:

74.     As a result of the foregoing violation stated herein  the Plaintiff **ALEXANDER  WILLIAMS JR** is entitled  to compnesatory damegs in thex sum of  Two Million Five Hundred Thousand dollars ($2,500,000.00) and is further entitled to puntive damages in the sum of Two Million Five Hundred Thousand dollars ($2,500,000.00)

75.     WHERE plaintiff **ALEXANDER  WILLIAMS JR**  demands judgemnt against the defendnats **CITY OF NEW YORK; ADW FLYN RIVERA; CAPTIN J HERNANDEZ SHEILD**

NO. 1806; DR DENRA MAYERS; IRA GORNISH; TERESA CUADRA; HESTER  MOULTON;

BESSIE FLORES-CLEMENTE; JUSTIN WILSON; LAURA HUNT; CAROLYN DICKIE; CORRECTIONAL

HEALTH SERVICES, in the amount of Two Million Five Hundred Thousand dollars ($2,500,

000.00) in compensatory damges and Two Million Five Hundred Thousand  dollars

($2,500,000.00) in puntivie damges, plus reasonable filing fees , court

fees, serving and disbursements fees of this action.

76.      **WHEREFORE** the Plaintiff **ALEXANDER WILLIAMS JR**, demands INJUCTION

RELIEF IN the following:

1.

• The cameras mentioned herein and in the facility clinic where
the plaintiff and all detainees engage in medical examination
take place that the cameras and/or personel in room where monitors
are located and can view, record, still shoot be removed.

• The the Plaintiff be taken to a seperate room whenever he is
examined, engage in discussion with mental health staff and/or
medical staff where cameras can not record, view, still shoot
him when he is engaging in this proctected right.

• That The plaintiff be able to engage in the right to sick call
and to be seen and/or examined by medical staff that does not
lack the mental capacity in their duties.

•  That the plaintiff be moved to a facility where retaliation
from staff and medical personel he is free from.

And for whatever other relief that the Court may deem just and

proper.

EXHIBIT -A

ATTACHMENT - C



# CITY OF NEW YORK - DEPARTMENT OF CORRECTION

## OFFICE OF CONSTITUENT AND GRIEVANCE SERVICES
### DISPOSITION FORM

Form.: 7102R
Eff.: 9/14/18
Ref.: Dir. 3376R-A

| Grievance Reference #: N/G | Date Filed: 11/20/2019 | Facility: MDC/9 North |
|---|---|---|

| Inmate Name: Williams, Alexander | Book and Case#: 141-18-01632 | Category: 4 |
|---|---|---|

From OCGS Inmate Statement Form, print or type short description of grievance:

Any time that i request sick call the doctor stands at my door and discuss the medical matter with me in the presence of correctional staff as well as other inmate who can hear what my medical issue is on their door. this matter has happened even when speaking with the mental health staff in regards to my open mental health case when they meet with me monthly.

Action Requested by Inmate: Like to be seen in private when making sick call claim as well as when speaking to mental health clinician.

## STEP 1: FORMAL RESOLUTION

Check one box: ☑ Grievance  ☑ Submission is not subjected to the Grievance Process

The Office Of Constituent and Grievance Services proposes to formally resolve your grievance as follows below. Alternatively, OCGS staff shall provide an explanation for why the submission is not subject to the OCGS process.

11/20/2019 the OCGS Coordinator informed grievant that staff complaint are submissions not subject to the grievance process and has been forwarded to Medical for investigations.

## CHECK THE APPROPRIATE BOX BELOW AND PROVIDE YOUR SIGNATURE
*(Failure to sign forms will forgo your right to appeal the proposed resolution.)*

☑ Yes, I accept the resolution  ☑ No  ☑ I request to appeal the resolution of this grievance to the Commanding officer.

*Note: If you appeal, the grievance staff can request for a preliminary based review if they feel the complaint was thoroughly investigated and addressed, prior to forwarding to the Commanding Officer.  You will receive the outcome of this review within (3) business days to inform you the appeal will proceed or you exhausted administrative remedies.*

| Inmate's Signature: | Date: 12-20-19 |
|---|---|

☑ Preliminary Review Requested

| Grievance Coordinator/Officer Signature: | Date: 11/20/2019 |
|---|---|

*Ref #262076*

# CITY OF NEW YORK · DEPARTMENT OF CORRECTION
## OFFICE OF CONSTITUENT AND GRIEVANCE SERVICES
### INMATE STATEMENT FORM

Form: 7591R-A
Eff. 9/14/18
Ref.: Dir. 3376R-A

| Inmate's Name: ALEXANDER WILLIAMS JR | 38 GPMD | Book & Case #: 141-180-1632 | NYSID #: 0189785BL |
|---|---|---|---|

| Facility: M.D.C | Housing Area: 9 NORTH | Date of Incident: NOV 9 2019 | Date Submitted: NOV 10 2019 |
|---|---|---|---|

All grievances must be submitted within ten business days after the incident occurred, unless it's a sexual abuse or harassment allegation. The inmate filing the grievance must personally prepare this statement. Upon collection by the Office of Constituent and Grievance Services (OCGS) staff, OCGS staff will time-stamp and issue it a grievance reference number. OCGS staff shall provide the inmate with a copy of this form as a record of receipt.

**Grievance:**
ANY TIME THAT I REQUEST SICH CALL THE DOCTOR STANDS AT MY DOOR AND DISCUSS THE MEDICAL MATTER WITH ME IN THE PRESNCE OF CORRECTIONAL STAFF AS WELL AS OTHER INMATES WHO CAN HEAR WHAT MY MEDIACL ISSUE IS ON THEIR DOOR. THIS MATTER HAS HAPPEN EVEN WHNE SPEAKING WITH THE MENTAL HEALTH STAFF IN REGARDS TO MY OPEN MENTAL HEALTH CASE WHEN THEY MEET WITH ME MONTHLY.

**Action Requested by Inmate:** LIKE TO BE SENN IN PRIVATE WHEN MAKING SICK CALL CLAIM AS WELL AS WHEN SPEAKING TO MENATI HEALTH CLINICIAN.

**Please read below and check the correct box:**

Do you agree to have your statement edited for clarification by OCGS staff?    Yes ☐   No ☒

Do you need the OCGS staff to write the grievance for you?    Yes ☐   No ☒

Have you filed this grievance with a court or other agency?    Yes ☐   No ☒

Did you require the assistance of an interpreter?    Yes ☒   No ☒

| Inmate's Signature: | Date of Signature: NOV 10 2019 |
|---|---|

### FOR DOC OFFICE USE ONLY

OCGS MUST PROVIDE A COPY OF THIS FORM TO THE INMATE AS A RECORD OF RECEIPT.

THIS FORM IS INVALID UNLESS SIGNED BY THE INMATE AND GRIEVANCE COORDINATOR

| TIME STAMP 2019 NOV 20 A 9:51 NYC DEPT CORRECTION CONSTITUENT & GRIEVANCE SVC | Grievance Reference #: N/G | Category: STAFF Complant |
|---|---|---|

Office of Constituent and Grievance Services Coordinator/Officer Signature:

EXHIBIT - B

# NYC HEALTH+ HOSPITALS

**WILLIAMS, ALEXANDER**

NYSID: 01897858L BookCase: 1411801632
Facility Code: MDC Housing Area: 9N
38 Y old Male, DOB: 02/08/1981
Account Number: 107220
195 UTICA AVE, 2F, 1K, BK, NY-11223

Insurance: Self Pay

**Appointment Facility: Manhattan Detention Center**

02/15/2019

Edith Ogbenna, RNC,FNP BC

**Past Medical History**
Chickenpox

**Allergies**
Seafood: anaphylaxis: Allergy

**Reason for Appointment**
1. Epigastric pain

**History of Present Illness**
Notes::
    c/o epigastric pain and acid reflux symptoms x 2 weeks. denies loss of appetite nausea vomiting and diarrhea.
VISIT COMPLEXITY SCALE:
    NON-INTAKE ACUITY
    *Non-Intake Acuity Scale 2: Complicated sick call (problem requiring diagnostic evaluation, documented history, physical exam, specified follow up) OR One chronic condition addressed with components specified in (3)*

**Vital Signs**

| BP | | |
|---|---|---|
| 123/78 | 02/15/2019 10:32:56 AM Eastern Standard Time | Edith Ogbenna |
| **Pulse** | | |
| 59 | 02/15/2019 10:32:56 AM Eastern Standard Time | Edith Ogbenna |
| **RR** | | |
| 14 | 02/15/2019 10:32:56 AM Eastern Standard Time | Edith Ogbenna |
| **Temp** | | |
| 97.2 | 02/15/2019 10:32:56 AM Eastern Standard Time | Edith Ogbenna |
| **SaO2** | | |
| 97 | 02/15/2019 10:32:56 AM Eastern Standard Time | Edith Ogbenna |

## Examination

General Examination:

GENERAL APPEARANCE: well-appearing, no acute distress.

HEENT: **HEAD:-**, normocephalic, atraumatic, **EYES:-**, PERRLA, EOMI, **EARS:-**, external ear unremarkable, **NOSE:-**, normal pink mucosa, **THROAT:-**, clear, no exudate.

ORAL CAVITY: ORAL MUCOSA:, no lesions, mucosa moist.

NECK: supple, no thyromegaly, no lymphadenopathy, no carotid bruit, no JVD, normal ROM, non-tender, THYROID:-, no thyromegaly, nontender and FROM, supple.

HEART: RATE:-, regular, RHYTHM:-, regular, HEART SOUNDS:-, normal S1S2, MURMURS:-, none.

CHEST: SHAPE AND EXPANSION:-, normal.

LUNGS: clear to auscultation, no wheezes/rhonchi/rales.

ABDOMEN: soft, NT/ND, BS present, no masses palpated, no guarding or rigidity, no hepatosplenomegaly.

## Assessments

1. Gastro-esophageal reflux disease without esophagitis - K21.9

## Treatment

**1. Gastro-esophageal reflux disease without esophagitis**

Start Omeprazole Capsule Delayed Release, 20 MG, Total Dose: 20 mg, Orally, Daily, 30 days, Drug Source: Pharmacy

## Follow Up

daily bing round

Disposition: General Population



**Electronically signed by Edith Ogbenna on 02/15/2019 at 06:38 PM EST**

**Sign off status: Completed**

---

**Manhattan Detention Center**
**125 White Street**

---

New York, NY 10013
Tel: 347-774-7000
Fax: 347-774-8088

---

**Patient: WILLIAMS, ALEXANDER   DOB: 02/08/1981    Progress Note: Edith Ogbenna, RNC,FNP BC   02/15/2019**

*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*

**EXHIBIT – C**

# NYC HEALTH+ HOSPITALS

**Insurance: Self Pay**

## WILLIAMS, ALEXANDER

NYSID: 01897858L BookCase: 1411801632
Facility Code: MDC Housing Area: 9N
38 Y old Male, DOB: 02/08/1981
Account Number: 107220
195 UTICA AVE, 2F, 1K, BK, NY-11223

**Appointment Facility: Manhattan Detention Center**

02/22/2019

**Appointment Provider: Bessie Flores-Clemente, PA**

## Current Medications
Taking
- Omeprazole 20 MG Capsule Delayed Release Total Dose: 20 mg Daily, stop date 03/17/2019, Drug Source: Pharmacy

## Past Medical History
Chickenpox

## Allergies
Seafood: anaphylaxis: Allergy

## Reason for Appointment
1. Medication Duration

## History of Present Illness
Notes::
    Pt inquires re: Omeprazole duration.
VISIT COMPLEXITY SCALE:
    NON-INTAKE ACUITY
    Non-Intake Acuity Scale *2: Complicated sick call (problem requiring diagnostic evaluation, documented history, physical exam, specified follow up) OR One chronic condition addressed with components specified in (3)*

## Vital Signs
VS - Pt declined.

## Examination
General Examination:
    GENERAL APPEARANCE: well-appearing, well-developed, no acute distress.

## Assessments
1. Encounter for general adult medical examination without abnormal findings - Z00.00 (Primary)

## Treatment
**1. Encounter for general adult medical examination without abnormal findings**
Notes: Pt ed done including informed that Omeprazole, exp 03/17/2019.

**2. Others**
Notes: eCW/Encounters indicated pt has 03/23/2019 Medical FU, Re: Annual Physical.

## Follow Up
prn (Reason: SCT)

Disposition: General Population

---

Patient: WILLIAMS, ALEXANDER   DOB: 02/08/1981   Progress Note: Bessie Flores-Clemente, PA   02/22/2019
*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*

Appointment Provider: Bessie Flores-Clemente, PA



**Electronically signed by Bessie Flores-Clemente , PA on 02/22/2019 at 09:56 AM EST**

**Sign off status: Completed**

**Addendum:**

02/22/2019 09:58 AM Flores-Clemente, Bessie > Correction: FU As Per Protocol of 9 North Sick Call Rounds.

---

**Manhattan Detention Center**
**125 White Street**
**New York, NY 10013**
**Tel: 347-774-7000**
**Fax: 347-774-8088**

---

Patient: WILLIAMS, ALEXANDER   DOB: 02/08/1981   Progress Note: Bessie Flores-Clemente, PA   02/22/2019

*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*

EXHIBIT - D

# NYC HEALTH+ HOSPITALS

Insurance: Self Pay

## WILLIAMS, ALEXANDER

NYSID: 01897858L BookCase: 1411801632
Facility Code: MDC Housing Area: 9N
38 Y old Male, DOB: 02/08/1981
Account Number: 107220
195 UTICA AVE, 2F, 1K, BK, NY-11223

Appointment Facility: Manhattan Detention Center

03/02/2019                                   Appointment Provider: Gloria Ihenacho, MD

## Current Medications
**Taking**
- Omeprazole 20 MG Capsule Delayed Release Total Dose: 20 mg Daily, stop date 03/17/2019, Drug Source: Pharmacy
- Multivitamin Adult - Tablet Total Dose: 1 tab Daily, stop date 03/30/2019, Drug Source: Pharmacy

## Past Medical History
Chickenpox

## Allergies
Seafood: anaphylaxis: Allergy

## Reason for Appointment
1. SICK CALL: ABDOMINAL PAIN;VOMITING

## History of Present Illness
Notes::
    C/o epigastric burning pain and nausea and vomiting of recently eaten solid food none with fluid or water
    Has normal bowel movement.
NURSING ROS:
    8:15PM- Pt given Zantac 300mg PO STAT per Dr.Ihenacho order. A.Burke RN*.

## Vital Signs

| BP | | |
|---|---|---|
| 119/77 | 03/02/2019 07:44:38 PM Eastern Standard Time | Candice Davis |
| **Pulse** | | |
| 70 | 03/02/2019 07:44:38 PM Eastern Standard Time | Candice Davis |
| **Temp** | | |
| 98.2 | 03/02/2019 07:44:38 PM Eastern Standard Time | Candice Davis |
| **SaO2** | | |
| 100 | 03/02/2019 07:44:38 PM Eastern Standard Time | Candice Davis |

## Examination
General Examination:
    GENERAL APPEARANCE: well-appearing; no acute distress.
    HEENT: **HEAD:-**; normocephalic; **EYES:-**; PERRLA; EOMI; conjunctiva clear.
    NECK: GENERAL:-; supple.
    HEART: PMI:-; normal; RATE:-; regular; RHYTHM:-; regular.
    LUNGS: clear to auscultation and percussion.

ABDOMEN: soft, no guarding or rigidity, , BS present, tender to palpation, epigastric tenderness.

## Assessments

1. Gastro-esophageal reflux disease without esophagitis - K21.9

## Treatment

**1. Gastro-esophageal reflux disease without esophagitis**

Start Zantac Tablet, 150 MG, Total Dose: 2 tabs, Orally, Stat, 0 days, KOP: No, Drug Source: Pharmacy

Stop Omeprazole Capsule Delayed Release, 20 MG, Total Dose: 20 mg, Orally, Daily, 30 days, KOP: No, Drug Source: Pharmacy

Start Omeprazole Capsule Delayed Release, 40 MG, Total Dose: 1 cap, Orally, Daily, 30 days, Drug Source: Pharmacy

   LAB: CBC w DIFF & PLATELETS (Ordered for 03/03/2019)

   LAB: HELICOBACTER ANTIBODY (G,A,M) (Ordered for 03/03/2019)

Notes: will schedule for f/u but advised to return if symptoms get worse.

**Appointment Provider: Gloria Ihenacho, MD**



**Electronically signed by Gloria Ihenacho , MD on 03/02/2019 at 08:21 PM EST**

**Sign off status: Completed**

**Manhattan Detention Center**
**125 White Street**
**New York, NY 10013**
**Tel: 347-774-7000**
**Fax: 347-774-8088**

Patient: WILLIAMS, ALEXANDER   DOB: 02/08/1981   Progress Note: Gloria Ihenacho, MD   03/02/2019

**EXHIBIT - E**

# NYC HEALTH+ HOSPITALS

**Insurance: Self Pay**

**WILLIAMS, ALEXANDER**
NYSID: 01897858L BookCase: 1411801632
Facility Code: MDC Housing Area: 9N
38 Y old Male, DOB: 02/08/1981
Account Number: 107220
195 UTICA AVE, 2F, 1K, BK, NY-11223

**Appointment Facility: Manhattan Detention Center**

03/07/2019      **Appointment Provider: Bessie Flores-Clemente, PA**

## Current Medications
**Taking**
- Multivitamin Adult - Tablet Total Dose: 1 tab Daily, stop date 03/30/2019, KOP: No, Drug Source: Pharmacy
- Omeprazole 40 MG Capsule Delayed Release Total Dose: 1 cap Daily, stop date 04/01/2019, KOP: No, Drug Source: Pharmacy

## Past Medical History
Chickenpox

## Allergies
Seafood: anaphylaxis: Allergy

## Reason for Appointment
1. Heartburn

## History of Present Illness
Notes::
    Pt c/o heartburn X intermittent. States tx'd w/ Omperazole & c/o "That medication doesn't work for me." Adds, "When I first came they gave me Zantac; that medication worked." Denies N/V/D/C.
VISIT COMPLEXITY SCALE:
    NON-INTAKE ACUITY
    Non-Intake Acuity Scale *2: Complicated sick call (problem requiring diagnostic evaluation, documented history, physical exam, specified follow up) OR One chronic condition addressed with components specified in (3)*

## Vital Signs
VS - Pt declined.

## Examination
General Examination:
    GENERAL APPEARANCE: well-appearing, well-developed, no acute distress; PE - Pt declined.

## Assessments
1. Heartburn - R12 (Primary)

## Treatment
**1. Heartburn**
Stop Omeprazole Capsule Delayed Release, 40 MG, Total Dose: 1 cap, Orally, Daily, 30 days, KOP: No, Drug Source: Pharmacy
Start Zantac Tablet, 150 MG, Total Dose: 150 mg, Orally, Twice a Day, 30 days, Drug Source: Pharmacy

**2. Others**
Notes: eCW/Encounters indicated pt has 03/23/2019 Medical FU, Re: Annual Physical & Epigastric Pain.

## Follow Up
As Per Protocol (Reason: 9 North Sick Call Rounds)

Disposition:


**Appointment Provider: Bessie Flores-Clemente, PA**




**Electronically signed by Bessie Flores-Clemente , PA on 03/07/2019 at 03:12 PM EST**

**Sign off status: Completed**

---

**Manhattan Detention Center**
**125 White Street**
**New York, NY 10013**
**Tel: 347-774-7000**
**Fax: 347-774-8088**

---

Patient: WILLIAMS, ALEXANDER   DOB: 02/08/1981   Progress Note: Bessie Flores-Clemente, PA   03/07/2019

*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*

EXHIBIT - F

# NYC HEALTH+ HOSPITALS

**Insurance: Self Pay**

## WILLIAMS, ALEXANDER
NYSID: 01897858L BookCase: 1411801632
Facility Code: MDC Housing Area: 9N
38 Y old Male, DOB: 02/08/1981
Account Number: 107220
195 UTICA AVE, 2F, 1K, BK, NY-11223

**Appointment Facility: Manhattan Detention Center**

---

03/12/2019                                    Appointment Provider: Ira Gornish, PA

**Current Medications**
Taking
- Multivitamin Adult - Tablet Total Dose: 1 tab Daily, stop date 03/30/2019, KOP: No, Drug Source: Pharmacy
- Zantac 150 MG Tablet Total Dose: 150 mg Twice a Day, stop date 04/06/2019, Drug Source: Pharmacy

**Past Medical History**
Chickenpox

**Allergies**
Seafood: anaphylaxis: Allergy

**Reason for Appointment**
1. pt had questions about GERD

**Vital Signs**
declined.

**Assessments**
1. Gastro-esophageal reflux disease without esophagitis - K21.9

**Treatment**
**1. Gastro-esophageal reflux disease without esophagitis**
Notes: Pt education done, continue Zantac.

**Follow Up**
prn

Disposition: General Population

**Appointment Provider: Ira Gornish, PA**



**Electronically signed by Ira Gornish , PA on 03/12/2019 at 10:01 AM EDT**

**Sign off status: Completed**

**Manhattan Detention Center**
125 White Street
New York, NY 10013
Tel: 347-774-7000
Fax: 347-774-8088

Patient: WILLIAMS, ALEXANDER   DOB: 02/08/1981   Progress Note: Ira Gornish, PA   03/12/2019

*Note generated by eClinicalWorks EMR/PM Software (www.eClinicalWorks.com)*

**EXHIBIT - G**

# NewYork-Presbyterian

Visit: 000422492 292
MRN: 7955 15 32
Location: LMH5C-0514-02
Name: WILLIAMS, ALEXANDER
Dr.: Vigiola Cruz, Mariana
DOB: (08 Feb 1981)

## tient Discharge Instructions

Thank you for choosing NewYork-Presbyterian Hospital for your care. Our staff is committed to consistently providing excellent care to all our patients and families. **You will receive a survey and we would appreciate if you took the time to complete it. We count on survey results to continue providing excellent care and recognize our Doctors, Nurses and Staff.** Thank you in advance for sharing your experiences with our NYP healthcare team.

## Hospital Information

### Preferred Language

Preferred Language: English

**Admission Date/Time**: 12/29/2019 12:02:00 PM

**Discharge Date:** 12/30/19

**Discharge Time**: 14:18 PM

**Attending of Record**: Vigiola Cruz, Mariana

**Discharge Diagnosis (You were treated for)**: Acute cholecystitis (K81.0)

**Procedures/Imaging**: CT Abdomen and Pelvis w IV contrast 12/29
CLINICAL HISTORY:
upper abdominal pain; Abdominal pain R10.9

TECHNIQUE:
CT of the abdomen and pelvis with intravenous contrast
IV Contrast type: 95 cc Omnipaque 300
Oral contrast: Gastrografin

OMPARISON:
ne.

FINDINGS:
Liver: Smooth in contour. Segment 2/3 hypodense lesion measuring 4.0 x 2.7 x 2.9 cm with suggestion of possible nodular peripheral discontinuous enhancement. Portal and hepatic veins patent.

Biliary system: Gallbladder nondistended without calcified stone. No biliary ductal dilatation.

Pancreas: Unremarkable.

Spleen: Unremarkable.

Adrenal glands: Unremarkable.

Kidneys: Normal enhancement. No mass. No hydronephrosis. No calcified stones.
Urinary bladder: Unremarkable.
Prostate/seminal vesicles: Unremarkable.

Bowel: Normal caliber. No wall thickening appreciated. Appendix not clearly visualized. No inflammation in the expected region of the appendix to suggest acute appendicitis.

Lymph nodes: No lymphadenopathy.

dominal aorta: No aneurysm.
erior vena cava: Unremarkable.

# NewYork-Presbyterian

Visit: 000422492 292
MRN: 7955 15 32
Location: LMH5C-0514-02
Name: WILLIAMS, ALEXANDER
Dr.: Vigiola Cruz, Mariana
DOB: (08 Feb 1981)

## Patient Discharge Instructions

Peritoneum: No ascites. No extraluminal air.

Abdominal wall: Umbilical fat containing hernia.

Bones: No aggressive lesion.  Left femoral intertrochanteric
sclerotic 1.5 cm lesion possibly enchondroma.
Soft tissues: Unremarkable.

Lung bases: Clear.

IMPRESSION:
Etiology of abdominal pain NOT identified on this study.

Left lateral segment hypodense heterogeneous liver mass up to 4.0 cm
possibly hemangioma but not definitive by the study.  Multiphase CT
or MRI contrast-enhanced studies recommended for further evaluation
on a nonemergent basis.

US Abdomen Right upper Quadrant 12/29
CLINICAL HISTORY:
Right upper quadrant pain

TECHNIQUE:
Limited ultrasound examination of the right upper quadrant abdomen
assessing gray scale appearance and color Doppler flow.

COMPARISON:
one

FINDINGS:
Liver
Size: 16.6 cm in longitudinal dimension
Appearance: Smooth contour. Normal echogenicity. 3.7 x 3.0 x 3.8 cm
echogenic left liver mass, corresponding to the finding on recent CT
and likely representing a hemangioma.
Portal veins: Patent with normal direction of flow
Hepatic veins: Patent with normal waveform

Biliary
Gallbladder nondistended
Wall thickness: Thickened (5 mm)
Pericholecystic fluid: Small volume pericholecystic fluid.
Lumen: Multiple shadowing gallstones.
Tenderness to sonographic palpation: Present
Intrahepatic ducts: Normal
Common duct: 6 mm; no calculi in visualized portions of duct.

Pancreas
Quality of visualization: Limited, portions of the head and distal
body/tail obscured by overlying bowel gas.
Appearance: Normal
Pancreatic duct: Not dilated

Right kidney
ze: 10.6 cm in longitudinal dimension
ppearance: Normal echogenicity. No mass. No hydronephrosis. No
shadowing calculi.

# NewYork-Presbyterian

**...tient Discharge Instructions**

Visit: 000422492 292
MRN: 7955 15 32
Location: LMH5C-0514-02
Name: WILLIAMS, ALEXANDER
Dr.: Vigiola Cruz, Mariana
DOB: (08 Feb 1981)

Free fluid: Absent

IMPRESSION:
Multiple shadowing gallstones with mild gallbladder wall thickening,
pericholecystic fluid and a positive sonographic Murphy sign.  Given
normal white count and lack of gallbladder distension, these findings
are equivocal for acute cholecystitis.

**Follow-up Appointments:**
APPOINTMENT REMINDERS
———————————————

- As needed for elective cholecystectomy
Howard L Beaton

ADDRESS:
170 William St., 5th floor
New York, NY 10038

PHONE:
646-898-4744 option #6

**Instruction:**

**Please call your doctor if you experience these symptoms :**

- ☑   Worsening Symptoms
- ☑   Severe Chills
- ☑   Chest Pain
- ☑   Shortness of Breath
- ☑   Worsening Pain

**Medications-Medication Safety Information**
☑   Please refer to Discharge Medication List

**Medications Administered on Day of Discharge** : Piperacillin Tazobactam Inj 4500mg IV PiggyBack q8hr    - administered
at: Dec 30 2019  5:19AM
Heparin Inj 5000UNIT Subcutaneous q8hr    - administered at: Dec 30 2019  5:19AM
D5W 1/2 Normal Saline 1000ml IV Cont Infusion <Continuous>    - administered at: Dec 30 2019 10:06AM
Heparin Inj 5000UNIT Subcutaneous q8hr    - administered at: Dec 30 2019  1:13PM
Piperacillin Tazobactam Inj 4500mg IV PiggyBack q8hr    - administered at: Dec 30 2019  1:13PM

**Pain Management Discharge Plan/Patient/Family Education**

☑   Medications Prescribed for pain management? ☑ No

**Diet/Nutrition**

- ☑   Diet(ADULT)
  - ☑   Regular Diet: NO dietary restrictions
☑   **Other Diet Instructions :** LOW FAT DIET;

☑   **Activity :**
- ☑   No Restrictions

☑   Additional Instructions for Patient/Family/Guardian/Caregiver:  Please take antibiotics as prescribed. Follow up as needed
for interval cholecystectomy.
...u may call Dr. Beaton's office at 212-312-5373 for any problems or questions.  This line is answered 24hrs a day, 7 days a
...eek by the answering service.  To schedule your follow appointment call 646-898-4744 option #6. You may also email Dr.
Beaton at hlb9001@med.cornell.edu for non-urgent issues or fax at 212-312-5769.

# NewYork-Presbyterian

Visit: 000422492 292
MRN: 7955 15 32
Location: LMH5C-0514-02
Name: WILLIAMS, ALEXANDER
Dr.: Vigiola Cruz, Mariana
DOB: (08 Feb 1981)

## Patient Discharge Instructions

**Special Instructions :**

☑   Smoking is detrimental to your health. If you currently smoke or have smoked in the last 12 months, you are advised to stop. You are also advised to avoid exposure to second hand smoke. You may call the quit line at 1-888-609-6292 or 1-866-NYQUITS for help.

**Patient Education Handouts:**

☑   **Smoking patient education handouts given:**

    ☑   N/A

    Document Name: N/A

☑   **Congestive heart failure patient educational handouts given:**

    ☑   N/A

☑   **Diabetes educational handouts given:**

    ☑   N/A

☑   **COPD patient educational handout given:**

☑   **Stroke patient education handouts given:**

    ☑   N/A

☑   **Transplant patient education handouts given:**

    ☑   N/A

☑   **Rehab patient education handouts given:**

    ☑   N/A

**Discharge Disposition and Destination:**
**You are being discharged to:**

    ☑   Other Facility : prison

**Patient Acknowledgment**
**Patient Signature :**

☑   THE ABOVE INSTRUCTIONS HAVE BEEN EXPLAINED AND GIVEN TO ME. MY QUESTIONS HAVE BEEN ANSWERED AND I UNDERSTAND THE INFORMATION PROVIDED TO ME.

☑   I HAVE ALSO RECEIVED THE DISCHARGE NOTICE ON BEHALF OF MYSELF AS THE PATIENT OR AS THE REPRESENTATIVE OF THE PATIENT.

☑   Name of PATIENT/FAMILY:

    Date:    Time:

☑   Signature Patient/Relative/Guardian:
    Signature: _____
    Date: ___/___/___    Time: _____        ☐a.m   ☐p.m

**RN Signature :**

    ☑   Discharge RN Signature : _____
    Date : ___/___/___    Time: _____        ☐a.m.   ☐p.m

**Caregiver (for patients 18 and older):**

    Primary Caregiver:
    Caregiver Identified: Yes

    Name: crystal

# NewYork-Presbyterian

Visit: 000422492 292
MRN: 7955 15 32
Location: LMH5C-0514-02
Name: WILLIAMS, ALEXANDER
Dr.: Vigiola Cruz, Mariana
DOB: (08 Feb 1981)

**atient Discharge Instructions**

Telephone #: 3479416436

Relationship to patient: spouse

Written authorization of release of personal health info obtained: No-patient declined to release PHI

☑ <u>**Plan of Care for Medical Provider at Discharge:**</u>
 Please take antibiotics as prescribed. Follow up as needed for interval cholecystectomy.

<u>**Medications**</u>*:*

<u>**For Questions and Concerns**</u>*:*

☑   For Questions or Concerns Call :

ExitCare® Patient Information
questions you have with your health care provider.

# Cholecystitis

Cholecystitis is an inflammation of your gallbladder. It is usually caused by a buildup of gallstones or sludge (*cholelithiasis*) in your gallbladder. The gallbladder stores a fluid that helps digest fats (*bile*). Cholecystitis is serious and needs treatment right away.

CAUSES
- Gallstones. Gallstones can block the tube that leads to your gallbladder, causing bile to build up. As bile builds up, the gallbladder becomes inflamed.
- Bile duct problems, such as blockage from scarring or kinking.
- Tumors. Tumors can stop bile from leaving your gallbladder correctly, causing bile to build up. As bile builds up, the gallbladder becomes inflamed.

SYMPTOMS
- Nausea.
- Vomiting.
- Abdominal pain, especially in the upper right area of your abdomen.
- Abdominal tenderness or bloating.
- Sweating.
- Chills.
- Fever.
- Yellowing of the skin and the whites of the eyes (*jaundice*).

DIAGNOSIS
Your caregiver may order blood tests to look for infection or gallbladder problems. Your caregiver may also order imaging tests, such as an ultrasound or computed tomography (CT) scan. Further tests may include a hepatobiliary iminodiacetic acid (HIDA) scan. This scan allows your caregiver to see your bile move from the liver to the gallbladder and to the small intestine.

TREATMENT
A hospital stay is usually necessary to lessen the inflammation of your gallbladder. You may be required to not eat or drink (*fast*) for a certain amount of time. You may be given medicine to treat pain or an antibiotic medicine to treat an infection. Surgery may be needed to remove your gallbladder (*cholecystectomy*) once the inflammation has gone down. Surgery may be needed right away if you develop complications such as death of gallbladder tissue (*gangrene*) or a tear (*perforation*) of the gallbladder.

HOME CARE INSTRUCTIONS
Home care will depend on your treatment. In general:

- If you were given antibiotics, take them as directed. Finish them even if you start to feel better.
- Only take over-the-counter or prescription medicines for pain, discomfort, or fever as directed by your caregiver.
- Follow a low-fat diet until you see your caregiver again.
- Keep all follow-up visits as directed by your caregiver.

ExitCare® Patient Information

SEEK IMMEDIATE MEDICAL CARE IF:
- Your pain is increasing and not controlled by medicines.
- Your pain moves to another part of your abdomen or to your back. You have a fever.
- You have nausea and vomiting.

MAKE SURE YOU:
- Understand these instructions.
- Will watch your condition.
- Will get help right away if you are not doing well or get worse.

Document Released: 12/18/2006 Document Revised: 3/11/2013 Document Reviewed: 11/2/2012
ExitCare® Patient Information ©2015 ExitCare, LLC. This information is not intended to replace advice given to you by your health care provider. Make sure you discuss any questions you have with your health care provider.

*This information is brief and general. It should not be the only source of your information on this health care topic.  It is not to be used or relied on for diagnosis or treatment. It does not take the place of instructions from your doctor. Talk to your health care providers before making a health care decision.  http://nyp.org/*

**NewYork-Presbyterian**
The University Hospitals of Columbia and Cornell

# ED PATIENT DISCHARGE INSTRUCTIONS
## LMH Adult Emergency Department

| | | | |
|---|---|---|---|
| **Patient Name:** | WILLIAMS, ALEXANDER | **MRN:** | 7955 15 32 |
| | | **Visit Number:** | 000422492 292 |
| **Date of Birth:** | 08-Feb-1981 | **Visit Date and Time:** | 12/29/2019 03:51 |
| **ED Attending MD:** Willis, Lucy Katherine | | **Discharge Date and Time:** | 12/29/2019 08:46 |

# EMERGENCY DEPARTMENT DIAGNOSIS:
# DISCHARGE INSTRUCTIONS:
## DISCHARGE INSTRUCTIONS GIVEN:

Abdominal Pain, Adult - 12/29/2019

### AFTER ED CARE PLAN:

Your  CT scan shows a 4cm liver mass, and you need a multiphase CT or MRI as soon as possible for further evaluation. Return to ER IMMEDIATELY for new/worsening symptoms.

### NEW MEDICATION:

New Medication: N/A

### RETURN TO EMERGENCY DEPARTMENT FOR PERSISTENT, WORSENING, OR NEW SYMPTOMS:

including: fever, chills, vomiting, abdominal pain, or other concerning/worsening symptoms.

# ED VISIT SUMMARY:
## Procedures:

No major procedures were performed in this visit

| Laboratory Results: | Result Value | Result Value Ranges | Status |
|---|---|---|---|
| **PT/INR** (12/29/2019 5:33 AM) | | | |
| Anticoagulant | None | [- ] | Final |
| Prothrombin Time | 15.5 | [12.1-15.4 second(s)] | Final |
| Int'l Normal Ratio | 1.2 | [0.8-1.3 ] | Final |
| **.Estimated Glomerular Filtration Rate** (12/29/2019 5:47 AM) | | | |
| eGFR African-American (MDRD) | >60 | [>=60- mL/min/1.73 m2] | Final |
| eGFR Non African-American (MDRD) | >60 | [>=60- mL/min/1.73 m2] | Final |
| **Lipase** (12/29/2019 5:47 AM) | | | |
| Lipase | 37 | [8-78 U/L] | Final |
| **Magnesium** (12/29/2019 5:47 AM) | | | |
| Magnesium | 2.0 | [1.6-2.6 mg/dL] | Final |
| **Auto Differential** (12/29/2019 5:23 AM) | | | |
| Nucleated RBC Auto | 0.2 | [0.0-1.0 /100 WBC's] | Final |
| Absolute NRBC | 0.0 | [- x10(9)/L] | Final |
| Neutrophil percent auto | 81.7 | [45.0-70.0 %] | Final |
| Lymphocyte Automated | 11.9 | [22.0-40.0 %] | Final |
| Monocyte percent auto | 5.8 | [0.0-8.0 %] | Final |
| Eosinophil percent auto | 0.2 | [0.0-8.0 %] | Final |
| Basophile percent auto | 0.4 | [0.0-2.0 %] | Final |

*Please join www.mynyp.org to get your results online*

**Requested: 12/29/2019  By: Willis, Lucy Katherine (MD)**

**NewYork-Presbyterian**
The University Hospitals of Columbia and Cornell

# ED PATIENT DISCHARGE INSTRUCTIONS
## LMH Adult Emergency Department

| | | | |
|---|---|---|---|
| **Patient Name:** | WILLIAMS, ALEXANDER | **MRN:** | 7955 15 32 |
| | | **Visit Number:** | 000422492 292 |
| **Date of Birth:** | 08-Feb-1981 | **Visit Date and Time:** | 12/29/2019 03:51 |
| **ED Attending MD:** Willis, Lucy Katherine | | **Discharge Date and Time:** | 12/29/2019 08:46 |

| | | | |
|---|---|---|---|
| Neutrophil Absolute Number | 5.60 | [1.80-7.70 x10(9)/L] | Final |
| Lymph Absolute # (Westchester) | 0.8 | [1.0-5.0 x10(9)/L] | Final |
| Monocyte Absolute Number | 0.40 | [0.00-1.32 x10(9)/L] | Final |
| **Basic Metabolic Panel** (12/29/2019 5:47 AM) | | | |
| Sodium Serum | 138 | [137-145 mmol/L] | Final |
| Potassium Serum | 4.4 | [3.6-5.0 mmol/L] | Final |
| Chloride Serum | 104 | [98-107 mmol/L] | Final |
| CO2 | 28.0 | [22.0-30.0 mmol/L] | Final |
| Urea Nitrogen (BUN) | 7.0 | [7.0-20.0 mg/dL] | Final |
| Creatinine Serum | 0.9 | [0.7-1.3 mg/dL] | Final |
| Glucose Random | 96 | [70-100 mg/dL] | Final |
| Anion Gap | 6.0 | [5.0-17.0 ] | Final |
| Calcium, Serum | 8.9 | [8.4-10.2 mg/dL] | Final |
| BUN/Creatinine Ratio | 7.8 | [6.0-22.0 ] | Final |
| **Liver Function Panel** (12/29/2019 6:0 AM) | | | |
| Total Protein | 7.0 | [5.6-8.1 g/dL] | Final |
| Albumin level | 4.1 | [3.2-5.0 g/dL] | Final |
| Globulin | 3 | [2-3 g/dL] | Final |
| Bilirubin, Total | 0.6 | [0.3-1.2 mg/dL] | Final |
| Bilirubin, Direct | 0.4 | [-<=0.3 mg/dL] | Final |
| Bilirubin, Indirect | 0.2 | [0.1-0.8 mg/dL] | Final |
| Aspartate Aminotransferase | 148 | [5-34 U/L] | Final |
| Alanine Aminotransferase | 105.0 | [0.0-55.0 U/L] | Final |
| Alkaline Phosphatase | 115.0 | [40.0-150.0 U/L] | Final |
| **Troponin I** (12/29/2019 5:54 AM) | | | |
| Troponin I | 0.0 | [0.0-0.4 ng/mL] | Final |
| **Complete Blood Count with Differential** (12/29/2019 5:23 AM) | | | |
| WBC Count | 6.8 | [4.0-11.0 x10(9)/L] | Final |
| Red Blood Cell Count | 5.80 | [4.60-6.20 x10(12)/L] | Final |
| Hemoglobin | 12.9 | [14.0-18.0 g/dL] | Final |
| Hematocrit | 40.4 | [40.0-54.0 %] | Final |
| Mean Corpuscular Vol | 69.6 | [80.0-95.0 fL] | Final |
| Mean Corp Hgb (Mch) | 22.2 | [26.0-33.0 pg] | Final |
| Mean Corp Hgb Conc | 31.9 | [31.0-36.0 g/dL] | Final |
| RDW-CV | 15.8 | [11.5-14.5 %] | Final |
| Platelet Count | 184 | [150-430 x10(9)/L] | Final |
| Mean Platelet Volume | 8.70 | [8.00-12.00 fL] | Final |

**Radiology Results:**

**CT Abdomen And Pelvis With IV Contrast**
(12/29/2019 7:36 AM)

*Please join www.mynyp.org to get your results online*

Requested: 12/29/2019   By: Willis, Lucy Katherine (MD)

**NewYork-Presbyterian**
The University Hospitals of Columbia and Cornell

# ED PATIENT DISCHARGE INSTRUCTIONS
## LMH Adult Emergency Department

| | | | |
|---|---|---|---|
| **Patient Name:** | WILLIAMS, ALEXANDER | **MRN:** | 7955 15 32 |
| | | **Visit Number:** | 000422492 292 |
| **Date of Birth:** | 08-Feb-1981 | **Visit Date and Time:** | 12/29/2019 03:51 |
| **ED Attending MD:** Willis, Lucy Katherine | | **Discharge Date and Time:** | 12/29/2019 08:46 |

Ordered: 12/29/2019 04:40 AM     PATIENT NAME: WILLIAMS, ALEXANDER
Location: 092                MRN: 79551532
Age: 38 yrs  Sex: M
Adm M.D.: RODRIGUEZ, JAMES E MD    DOB: 02/08/1981

Exam Date: Accession #:  Exam Code:    Order M D:
12/29/2019 *8747528    CTABPELW     RODRIGUEZ, JAMES E MD

CLINICAL HISTORY:
upper abdominal pain; Abdominal pain R10.9

TECHNIQUE:
CT of the abdomen and pelvis with intravenous contrast
IV Contrast type: 95 cc Omnipaque 300
Oral con trast: Gastrografin

COMPARISON:
None.

FINDINGS:
Liver: Smooth in contour. Segment 2/3 hypodense lesion measuring 4.0 x 2.7 x 2.9 cm with suggestion of possible nodular peripheral discontinuous enhancement.  Portal and hepatic veins patent.

Biliary system: Gallbladder nondistended without calcified stone. No biliary ductal dilatation.

Pancreas: Unremarkable.

Spleen: Unremarkable.

Adrenal glands: Unremarkable.

Kidneys: Normal enhancement. No mass. No hydronephrosis. No calc ified stones.
Urinary bladder: Unremarkable.
Prostate/seminal vesicles: Unremarkable.

Bowel: Normal caliber. No wall thickening appreciated.  Appendix not clearly visualized. No inflammation in the expected region of the appendix to suggest ac ute appendicitis. .

*Please join www.mynyp.org to get your results online*

Requested: 12/29/2019  By: Willis, Lucy Katherine (MD)

**NewYork-Presbyterian**
The University Hospitals of Columbia and Cornell

# ED PATIENT DISCHARGE INSTRUCTIONS
## LMH Adult Emergency Department

| | | | |
|---|---|---|---|
| **Patient Name:** | WILLIAMS, ALEXANDER | **MRN:** | 7955 15 32 |
| | | **Visit Number:** | 000422492 292 |
| **Date of Birth:** | 08-Feb-1981 | **Visit Date and Time:** | 12/29/2019 03:51 |
| **ED Attending MD:** Willis, Lucy Katherine | | **Discharge Date and Time:** | 12/29/2019 08:46 |

Lymph nodes: No lymphadenopathy.

Abdominal aorta: No aneurysm.
Inferior vena cava: Unremarkable.

Peritoneum: No ascites. No extraluminal air.

Abdominal wall: Umbilical fat containing hernia.

Bones: No aggressive le sion.  Left femoral intertrochanteric
sclerotic 1.5 cm lesion possibly enchondroma.
Soft tissues: Unremarkable.

Lung bases: Clear.

IMPRESSION:
Etiology of abdominal pain NOT identified on this study.

Left lateral segment hypodense heterge neous liver mass up to 4.0 cm
possibly hemangioma but not definitive by the study.  Multiphase CT
or MRI contrast-enhanced studies recommended for further evaluation
on a nonemergent basis.

Prepared By: Sy, Calvin MD
Study interpreted and repor t approved by: Sy, Calvin MD
Electronically signed Diagnostic Report Imaging Report
12/29/2019 07:14 AM - 12/29/2019 07:35 AM
Exam Complete - Signed-Off

---

**Disclaimer:**

| **Test Name** | **Disclaimer Text** |
|---|---|
| Liver Function Panel | Reference ranges for patients &lt;12 months are incompletely defined. |
| PT/INR | Suggested therapeutic INR ranges for patients stabilized on oral anticoagulants:&#x0D; &#x0D; Venous thrombosis, pulmonary embolism and atrial fibrillation - 2.0 - 3.0&#x0D; &#x0D; Prosthetic heart valves and recurrent systemic embolization - 2.5 - 3.5 |

**Patient Signature:**

*Please join www.mynyp.org to get your results online*

Requested: 12/29/2019   By: Willis, Lucy Katherine (MD)

**NewYork-Presbyterian**
The University Hospitals of Columbia and Cornell

# ED PATIENT DISCHARGE INSTRUCTIONS
## LMH Adult Emergency Department

| | | | |
|---|---|---|---|
| **Patient Name:** | WILLIAMS, ALEXANDER | **MRN:** | 7955 15 32 |
| | | **Visit Number:** | 000422492 292 |
| **Date of Birth:** | 08-Feb-1981 | **Visit Date and Time:** | 12/29/2019 03:51 |
| **ED Attending MD:** | Willis, Lucy Katherine | **Discharge Date and Time:** | 12/29/2019 08:46 |

**I Have fully understood what was explained to me:**

X _____

Patient or Guardian Signature
WILLIAMS, ALEXANDER

Signature acknowledges that Patient and/or Guardian has received this instructions and understands them. Patient and/or Guardian also understands that he/she should follow up with his/her primary care physician once discharged.

**Discharge Instructions**

• TO PATIENT:
THIS EXAMINATION AND TREATMENT WHICH YOU HAVE RECEIVED HAS BEEN ON AN EMERGENCY BASIS ONLY AND HAS NOT BEEN INTENDED TO BE A SUBSTITUTE OR REPLACEMENT FOR COMPLETE MEDICAL CARE. FOR YOUR PROTECTION AND TO PREVENT POSSIBLE COMPLICATIONS, IT IS SUGGESTED YOU FOLLOW THE RECOMMENDATIONS CHECKED BELOW.

X-RAYS
The interpretation of your X-rays and other radiological test at the time of your visit to the Emergency Department is a preliminary report. Radiological tests are reviewed before a final report is issued. You will be notified if there is a change in diagnosis. If your symptoms persist or worsen you should return to the Emergency Department.
Additional studies may be necessary as some abnormalities become apparent at a later time.

Call 212-746-0595 Monday - Friday 10 to 6 for test results.

EXHIBIT - H



# CITY OF NEW YORK - DEPARTMENT OF CORRECTION

## OFFICE OF CONSTITUENT AND GRIEVANCE SERVICES
### DISPOSITION FORM

Form.: 7102R
Eff.:8/23/19
Ref.: Dir. 3376R-A

| Grievance Reference #: 274126/T002/20 | Date Filed: 01/03/20 | Facility: MDC |
|---|---|---|

| Inmate Name: WILLIAMS, ALEXANDER | Book and Case#: 141-18-01632 | Category: MEDICAL |
|---|---|---|

From OCGS Inmate Statement Form, print or type short description of grievance: **I was taken to hospital for medical**

injury and told by doctor that my diet was to be changed in preparation of surgery the the dietitian changed my diet but the facility has yet sent me the correct feeding 3x times a day.

Action Requested by Inmate: correct my diet.

### STEP 1: FORMAL RESOLUTION

Check one box: ☑ Grievance   ☐ Submission is not subjected to the Grievance Process

The Office Of Constituent and Grievance Services proposes to formally resolve your grievance as follows below. Alternatively, OCGS staff shall provide an explanation for why the submission is not subject to the OCGS process. Grievances not subject to the Grievance Process cannot be appealed.

On 01/03/20 The OCGS reviewed your statement and learned that according to CHS patient relations you are on a Therapeutic diet list.

### CHECK THE APPROPRIATE BOX BELOW AND PROVIDE YOUR SIGNATURE
*(Failure to sign forms will forgo your right to appeal the proposed resolution.)*

☐ Yes, I accept the resolution   ☐ No   ☑ I request to appeal the resolution of this grievance to the Commanding officer.

*Note: If you appeal, the grievance staff can request for a preliminary based review if they feel the complaint was thoroughly investigated and addressed, prior to forwarding to the Commanding Officer. You will receive the outcome of this review within (3) business days to inform you the appeal will proceed or you exhausted administrative remedies. Grievance not subject to the Grievance Process cannot be appealed.*

| Inmate's Signature: | Date: Jan 8 2020 |
|---|---|

☐ Preliminary Review Requested

| Grievance Coordinator/Officer Signature: Williams 17351 | Date: 1-8-20 |
|---|---|



# CITY OF NEW YORK - DEPARTMENT OF CORRECTION

## OFFICE OF CONSTITUENT AND GRIEVANCE SERVICES
## INMATE STATEMENT FORM

Form: 7101R-A
Eff.:9/14/18
Ref.: Dir. 3376R-A

| Inmate's Name: Alex William | Book & Case #: 141RV1650 | NYSID #: 07097858L |
|---|---|---|
| Facility: MDC | Housing Area: 9N | Date of Incident: 12-31-19 | Date Submitted: 01-01-2020 |

All grievances must be submitted within ten business days after the incident occurred, unless it's a sexual abuse or harassment allegation. The inmate filing the grievance must personally prepare this statement. Upon collection by the Office of Constituent and Grievance Services (OCGS) staff, OCGS staff will time-stamp and issue it a grievance reference number. OCGS staff shall provide the inmate with a copy of this form as a record of receipt.

Grievance: I was taken to Hospital for medical Injury And told by doctor That my diet was to be change In preparation of surgery The dietation here changed my diet But the facility Has yet to send me the correct feeding 3x times a day

Action Requested by Inmate: Correct my diet

## Please read below and check the correct box:

Do you agree to have your statement edited for clarification by OCGS staff?   Yes ☐   No ☒

Do you need the OCGS staff to write the grievance for you?   Yes ☐   No ☒

Have you filed this grievance with a court or other agency?   Yes ☐   No ☒

Did you require the assistance of an interpreter?   Yes ☐   No ☒

| Inmate's Signature: | Date of Signature: JAN 1 2020 |
|---|---|

### FOR DOC OFFICE USE ONLY

OCGS MUST PROVIDE A COPY OF THIS FORM TO THE INMATE AS A RECORD OF RECEIPT.

THIS FORM IS INVALID UNLESS SIGNED BY THE INMATE AND GRIEVANCE COORDINATOR

| TIME STAMP | Grievance Reference # 274126 / T002/20 | Category: # 12-Medical |
|---|---|---|
| 00 4 A 9- NAP 2020 CONSTITUENT & GRIEVANCE SVC NEW YORK CITY DEPT OF CORRECTION | Office of Constituent and Grievances Services Coordinator/Officer Signature: Williams 1785 | |

EXHIBIT - I



# CITY OF NEW YORK - DEPARTMENT OF CORRECTION

## OFFICE OF CONSTITUENT AND GRIEVANCE SERVICES
### DISPOSITION FORM

Form: 7102R
Eff.:8/23/19
Ref.: Dir. 3376R-A

| Grievance Reference #: 281259 | Date Filed: 01/29/20 | Facility: MDC |
|---|---|---|

| Inmate Name: WILLIAMS, ALEXANDER | Book and Case#: 141-18-01632 | Category: N/G-MD/STA |
|---|---|---|

From OCGS Inmate Statement Form, print or type short description of grievance:

On Jan 21 2020 when returning from court I had a medical emergency while returning to the jail. Once the transportation got got to the jail I was forced to wait outside on centre street while experiencing my medical emergency I currently have a gall bladder infection that causes gall bladder attacks where I go through periods of having sharp pains and lost of breathe.
I did not received medical attention until a hour and half later.

Action Requested by Inmate: I would like a copy of the report written and/all doc in relation to this

incident and I would like a copy of this complaint I placed in the file of every officer and medical personal involved.

### STEP 1: FORMAL RESOLUTION

Check one box: ☐ Grievance ☑ Submission is not subjected to the Grievance Process

The Office Of Constituent and Grievance Services proposes to formally resolve your grievance as follows below. Alternatively, OCGS staff shall provide an explanation for why the submission is not subject to the OCGS process. Grievances not subject to the Grievance Process cannot be appealed.

On 01/29/20 The OCGS reviewed your complaint and determined that it is not under the purview of the OCGS; however it has been forwarded to the Head of Medical Staff in MDC for further investigation.

### CHECK THE APPROPRIATE BOX BELOW AND PROVIDE YOUR SIGNATURE
*(Failure to sign forms will forgo your right to appeal the proposed resolution.)*

☐ Yes, I accept the resolution ☐ No ☐ I request to appeal the resolution of this grievance to the Commanding officer.

*Note: If you appeal, the grievance staff can request for a preliminary based review If they feel the complaint was thoroughly investigated and addressed, prior to forwarding to the Commanding Officer. You will receive the outcome of this review within (5) business days to inform you the appeal will proceed or you exhausted administrative remedies. Grievance not subject to the Grievance Process cannot be appealed.*

| Inmate's Signature: | Date: 1/29/2020 |
|---|---|

☐ Preliminary Review Requested

| Grievance Coordinator/Officer Signature: Wi/lkas MBA | Date: 1-29-20 |
|---|---|



# CITY OF NEW YORK - DEPARTMENT OF CORRECTION
## OFFICE OF CONSTITUENT AND GRIEVANCE SERVICES
### INMATE STATEMENT FORM

Form.: 7101R-A
Eff.:9/14/18
Ref.: Dir. 3376R-A

**Inmate's Name:** alexander williams

**Book & Case #:** 141-180-1632

**NYSID #:** 018978582

**Facility:** m.d.c

**Housing Area:** 9 north

**Date of Incident:** jan 21 2020

**Date Submitted:** jan 22 2020

All grievances must be submitted within ten business days after the incident occurred, unless it's a sexual abuse or harassment allegation, The inmate filing the grievance must personally prepare this statement. Upon collection by the Office of Constituent and Grievance Services (OCGS) staff, OCGS staff will time-stamp and issue it a grievance reference number. OCGS staff shall provide the inmate with a copy of this form as a record of receipt.

**Grievance:**

on jan 21 2020 when returning from court i had a medical emergency while returning to the jail. once the transportation got to the jail i was forced to wait outside on centre street while experiencing my medical emergency currently have a gall bladder infection that causes gall bladder attacks where i go through periods of having sharp pains and lost of breathe. i did not recived medical attention until a hour and half later.

**Action Requested by Inmate:** i would like a copy of the report written and/all doc in rel;ation to this incident and i would like a copy of this complaint placed in the file of evry officer and medical personal involved.

Please read below and check the correct box:

Do you agree to have your statement edited for clarification by OCGS staff?  Yes ☐  No ☒

Do you need the OCGS staff to write the grievance for you?  Yes ☐  No ☒

Have you filed this grievance with a court or other agency?  Yes ☐  No ☒

Did you require the assistance of an interpreter?  Yes ☐  No ☒

**Inmate's Signature:** _[signature]_

**Date of Signature:** Jan 20 2020

### FOR DOC OFFICE USE ONLY

OCGS MUST PROVIDE A COPY OF THIS FORM TO THE INMATE AS A RECORD OF RECEIPT.

THIS FORM IS INVALID UNLESS SIGNED BY THE INMATE AND GRIEVANCE COORDINATOR

**TIME STAMP** JAN 29 P 12: 4[?]
CONSTITUENT & GRIEVANCE SVC
DEPT CORRECTION

**Grievance Reference #** 281259

Office of Constituent and Grievances Services Coordinator/Officer Signature: _[signature] williamsn388_

**Category:** Non-Grievable Staff

EXHIBIT - J

**ATTACHMENT - C**



# CITY OF NEW YORK - DEPARTMENT OF CORRECTION

## OFFICE OF CONSTITUENT AND GRIEVANCE SERVICES
### DISPOSITION FORM



Form.: 7102R
Eff.:8/23/19
Ref.: Dir. 3376R-A

| Grievance Reference #: 294345/T095/20 | Date Filed: 03/17/20 | Facility: MDC |
|---|---|---|

| Inmate Name: WILLIAMS, ALEXANDER | Book and Case#: 141-18-01632 | Category: MEDICAL |
|---|---|---|

From OCGS Inmate Statement Form, print or type short description of grievance: In the last week or so numerous officers has worked the housing unit and seem to be sick and/or exhibiting signs of the flu MDC has not establish any prevention procedures such as sanitizing daily even though the date of NY is currently in state of emergency due to the rapid spread of corona virus. MDC is located in china town where it suspect virus as

Action Requested by Inmate: Please test me for corna virus and please create sanitation crew to sanitize housing unit each tour.

### STEP 1: FORMAL RESOLUTION

Check one box: ☑ Grievance    ☐ Submission is not subjected to the Grievance Process

The Office Of Constituent and Grievance Services proposes to formally resolve your grievance as follows below. Alternatively, OCGS staff shall provide an explanation for why the submission is not subject to the OCGS process. Grievances not subject to the Grievance Process cannot be appealed.

ON 03/17/20 The OCGS reviewed your statement and it was forwarded to the Head of MDC medical staff for further review and handling.

### CHECK THE APPROPRIATE BOX BELOW AND PROVIDE YOUR SIGNATURE
*(Failure to sign forms will forgo your right to appeal the proposed resolution.)*

☐ Yes, I accept the resolution    ☐ No    ☑ I request to appeal the resolution of this grievance to the Commanding officer.

*Note: If you appeal, the grievance staff can request for a preliminary based review if they feel the complaint was thoroughly investigated and addressed, prior to forwarding to the Commanding Officer. You will receive the outcome of this review within (3) business days to inform you the appeal will proceed or you exhausted administrative remedies. Grievance not subject to the Grievance Process cannot be appealed.*

| Inmate's Signature: | Date: 3/19/2020 |
|---|---|

☑ Preliminary Review Requested

| Grievance Coordinator/Officer Signature: | Date: 3/19/20 |
|---|---|

# CITY OF NEW YORK - DEPARTMENT OF CORRECTION

## OFFICE OF CONSTITUENT AND GRIEVANCE SERVICES
### INMATE STATEMENT FORM

Form: 7101R-A
Eff.:9/14/18
Ref.: Dir. 3376R-A

**Inmate's Name:** _Oliver Wellin_

**Book & Case #:** _141180/630_

**NYSID #:** _018978586_

**Facility:** _M.D.C_

**Housing Area:** _9 north_

**Date of incident:** _March 9 200_

**Date Submitted:** _March 9 200_

All grievances must be submitted within ten business days after the incident occurred, unless it's a sexual abuse or harassment allegation. The inmate filing the grievance must personally prepare this statement. Upon collection by the Office of Constituent and Grievance Services (OCGS) staff, OCGS staff will time-stamp and issue it a grievance reference number. OCGS staff shall provide the inmate with a copy of this form as a record of receipt.

**Grievance:** _in the last week or so, numerous officer has served the housing unit and seemed to be sick and/or exhibiting signs of the flu flu. M.D.C has not establish any prevention procedures such as sanitizing daily even though the state of NY is currently in state of emergency due to the rapid spread of corona virus. M.D.C is located in china town believe its frequent this virus origin_

**Action Requested by Inmate:** _please test me for corona virus and please create sanitation even to sanitize housing unit each four_

**Please read below and check the correct box:**

Do you agree to have your statement edited for clarification by OCGS staff?   Yes ☐  No ☒

Do you need the OCGS staff to write the grievance for you?   Yes ☐  No ☒

Have you filed this grievance with a court or other agency?   Yes ☐  No ☒

Did you require the assistance of an interpreter?   Yes ☐  No ☒

**Inmate's Signature:** _(signature)_

**Date of Signature:** _March 9 2020_

### FOR DOC OFFICE USE ONLY

OCGS MUST PROVIDE A COPY OF THIS FORM TO THE INMATE AS A RECORD OF RECEIPT.

THIS FORM IS INVALID UNLESS SIGNED BY THE INMATE AND GRIEVANCE COORDINATOR

**TIME STAMP**

2020 MAR 17 P 2:16

NYC DEPT CORRECTION
CONSTITUENT & GRIEVANCE SVC

**Grievance Reference #** _294345/7095/20_

**Category:** _#9-Medical_

Office of Constituent and Grievances Services Coordinator/Officer Signature: _(signature) 17881_

EXHIBIT - K



# CITY OF NEW YORK - DEPARTMENT OF CORRECTION



## OFFICE OF CONSTITUENT AND GRIEVANCE SERVICES
### DISPOSITION FORM

| | |
|---|---|
| Form: 7102R | |
| Eff.:8/23/19 | |
| Ref.: Dir. 3376R-A | |

| Grievance Reference #: 295244 | Date Filed: 03/19/20 | Facility: MDC |
|---|---|---|

| Inmate Name: WILLIAMS, ALEXANDER | Book and Case#: 141-18-01632 | Category: NGMEDSTAFF |
|---|---|---|

From OCGS Inmate Statement Form, print or type short description of grievance: I do not feel good I have headaches

I have been vomiting and I feel hot and cold I would like to be seen by medical for sick call. The Officer CO. Raphel contacted medical and they still refuse to come to unit 9 North please check medical care logbook for reference.

After requesting to be tested for corona virus on March 11, 2020 today the doctors afforded medical sickcall to 9 south but refused to afford sick-call and medical care to me on 9 North. Please check sick call log book in unit 9 North.

Action Requested by Inmate: Please afford me adequate medical care stop retaliation over my civil complaint

Please afford me adequate medical care please stop retaliating.

### STEP 1: FORMAL RESOLUTION

Check one box: ☐ Grievance ☑ Submission is not subjected to the Grievance Process

The Office Of Constituent and Grievance Services proposes to formally resolve your grievance as follows below. Alternatively, OCGS staff shall provide an explanation for why the submission is not subject to the OCGS process. Grievances not subject to the Grievance Process cannot be appealed.

On 03/19/20 The OCGS reviewed your statement and determined that it is not under the purview of the OCGS; however it has been forwarded to the MDC Medical staff for further review and handling.

### CHECK THE APPROPRIATE BOX BELOW AND PROVIDE YOUR SIGNATURE
*(Failure to sign forms will forgo your right to appeal the proposed resolution.)*

☐ Yes, I accept the resolution ☑ No ☐ I request to appeal the resolution of this grievance to the Commanding officer.

Note: If you appeal, the grievance staff can request for a preliminary based review if they feel the complaint was thoroughly investigated and addressed, prior to forwarding to the Commanding Officer. You will receive the outcome of this review within (3) business days to inform you the appeal will proceed or you exhausted administrative remedies. Grievance not subject to the Grievance Process cannot be appealed.

| Inmate's Signature: | Date: 3/15/20 |
|---|---|

☐ Preliminary Review Requested

| Grievance Coordinator/Officer Signature: | Date: 3/19/20 |
|---|---|

# CITY OF NEW YORK - DEPARTMENT OF CORRECTION
## OFFICE OF CONSTITUENT AND GRIEVANCE SERVICES
### INMATE STATEMENT FORM

**Inmate's Name:** Alexander Williams

**Book & Case #:** 1411801638

**NYSID #:** 01897858L

**Facility:** MDC

**Housing Area:** 9 N

**Date of Incident:** March 13 2020

**Date Submitted:** Mar 13 2020

All grievances must be submitted within ten business days after the incident occurred, unless it's a sexual abuse or harassment allegation. The inmate filing the grievance must personally prepare the statement. Upon collection by the Office of Constituent and Grievance Services (OCGS) staff, OCGS staff will time-stamp and issue it a grievance reference number. OCGS staff shall provide the inmate with a copy of this form as a record of receipt.

**Grievance:** I do not feel good I have head aches I have been vomiting and I feel hot and cold. I would like to be seen By medical for seen. Call to officer Co Raphel contacted medical and they still refuse to care to unit 9 north please check medical care log book for reference

**Action Requested by Inmate:** please offed me adequate medical care stop retaliation over my civil complaints

**Please read below and check the correct box:**

Do you agree to have your statement edited for clarification by OCGS staff?   Yes ☒   No ☐

Do you need the OCGS staff to write the grievance for you?   Yes ☐   No ☒

Have you filed this grievance with a court or other agency?   Yes ☐   No ☒

Did you require the assistance of an interpreter?   Yes ☐   No ☒

**Inmate's Signature:** [signature]

**Date of Signature:** Mar 13 2020

### FOR DOC OFFICE USE ONLY

OCGS MUST PROVIDE A COPY OF THIS FORM TO THE INMATE AS A RECORD OF RECEIPT.

THIS FORM IS INVALID UNLESS SIGNED BY THE INMATE AND GRIEVANCE COORDINATOR

**TIME STAMP** P 11:54

CONSTITUENT RENTAL SVC
CORRECTION GRIEVANCE SVC

**Grievance Reference #:** 295244

**Category:** Non-Grievable   medical staff conflict

Official Constituent and Grievance Services Coordinator Signature: C/O Williams #1851



# CITY OF NEW YORK - DEPARTMENT OF CORRECTION
## OFFICE OF CONSTITUENT AND GRIEVANCE SERVICES
## INMATE STATEMENT FORM

Form.: 7101R-A
Eff.:9/14/18
Ref.: Dir. 3376R-A

**Inmate's Name:** Alexander Williams

**Book & Case #:** 1410806 38

**NYSID #:** 01897858L

**Facility:** MDC

**Housing Area:** 9 N

**Date of Incident:** MAY 12 2020

**Date Submitted:** MAY 12 2020

All grievances must be submitted within ten business days after the incident occurred, unless it's a sexual abuse or harassment allegation. The inmate filing the grievance must personally prepare this statement. Upon collection by the Office of Constituent and Grievance Services (OCGS) staff, OCGS staff will time-stamp and issue it a grievance reference number. OCGS staff shall provide the inmate with a copy of this form as a record of receipt.

**Grievance:** After requesting to be tested for coronavirus, on Mar 11 2020, today the doctor afforded medical Sick-call to 9 south but Refused to afford Sick-call and medical care to me on 9 north. Please check Sick-call log book on court 9 north.

**Action Requested by Inmate:** please afford me adequate medical care, please stop retaliating

### Please read below and check the correct box:

Do you agree to have your statement edited for clarification by OCGS staff?   Yes ☐   No ☐

Do you need the OCGS staff to write the grievance for you?   Yes ☐   No ☐

Have you filed this grievance with a court or other agency?   Yes ☐   No ☐

Did you require the assistance of an interpreter?   Yes ☐   No ☐

**Inmate's Signature:** Alexander Williams

**Date of Signature:** March 12 2020

### FOR DOC OFFICE USE ONLY

**OCGS MUST PROVIDE A COPY OF THIS FORM TO THE INMATE AS A RECORD OF RECEIPT.**

**THIS FORM IS INVALID UNLESS SIGNED BY THE INMATE AND GRIEVANCE COORDINATOR**

**TIME STAMP** MAR 19 A 11:54

**Grievance Reference #** 295244

**Category:** Non-Grievable Medical Staff Complaint

**Office of Constituent and Grievances Services Coordinator/Officer Signature:** C/O Williams (Anis 1735)

EXHIBIT - L




# CITY OF NEW YORK - DEPARTMENT OF CORRECTION

## OFFICE OF CONSTITUENT AND GRIEVANCE SERVICES

### DISPOSITION FORM

Form.: 7102R
Eff.:8/23/19
Ref.: Dir. 3376R-A

| Grievance Reference #:<br>298306 | Date Filed:<br>03/30/20 | Facility:<br>MDC |
|---|---|---|

| Inmate Name:<br>WILLIAMS, ALEXANDER | Book and Case#:<br>141-18-01632 | Category:<br>NGSTAFFCOM |
|---|---|---|

From OCGS Inmate Statement Form, print or type short description of grievance: **I am writing grivancing the**

the fact that NYC does and the City of New York has not taken any preventive measures to protect me from transmitting and catching Covid 19 even through DOCs has knowledge that I am high risk due to know respiratory health issues such as my asthma and the infection in gallbladder that stopped me from breathing 2x twice in 2020 this for to medical records available even request.

Action Requested by Inmate: To be released under the N.Y.S. Statue, stop MDC officials from retaliating

### STEP 1: FORMAL RESOLUTION

Check one box: ☐ Grievance ☑ Submission is not subjected to the Grievance Process

The Office Of Constituent and Grievance Services proposes to formally resolve your grievance as follows below. Alternatively, OCGS staff shall provide an explanation for why the submission is not subject to the OCGS process. Grievances not subject to the Grievance Process cannot be appealed.

On 03/30/20 The OCGS reviewed your complaint and determined that it is not under the purview of the OCGS; however it has been forwarded to the Head of the Facility for further review and handling.

### CHECK THE APPROPRIATE BOX BELOW AND PROVIDE YOUR SIGNATURE
*(Failure to sign forms will forgo your right to appeal the proposed resolution.)*

☐ Yes, I accept the resolution ☐ No ☒ I request to appeal the resolution of this grievance to the Commanding officer.

*Note: If you appeal, the grievance staff can request for a preliminary based review if they feel the complaint was thoroughly investigated and addressed, prior to forwarding to the Commanding Officer. You will receive the outcome of this review within (3) business days to inform you the appeal will proceed or you exhausted administrative remedies. Grievance not subject to the Grievance Process cannot be appealed.*

| Inmate's Signature: | Date: 3/31/2020 |
|---|---|

☐ Preliminary Review Requested

| Grievance Coordinator/Officer Signature: | Date: 3/30/20 |
|---|---|

# CITY OF NEW YORK - DEPARTMENT OF CORRECTION

## OFFICE OF CONSTITUENT AND GRIEVANCE SERVICES
## INMATE STATEMENT FORM

Form.: 7101R-A
Eff.:9/14/18
Ref.: Dir. 3376R-A

| Inmate's Name: Alexander Williams | Book & Case #: 14118016330 | NYSID #: 01897858L |
|---|---|---|
| Facility: M.D.C | Housing Area: 9 N | Date of Incident: March 25 2020 | Date Submitted: March 27 2020 |

All grievances must be submitted within ten business days after the incident occurred, unless it's a sexual abuse or harassment allegation. The inmate filing the grievance must personally prepare this statement. Upon collection by the Office of Constituent and Grievance Services (OCGS) staff, OCGS staff will time-stamp and issue it a grievance reference number. OCGS staff shall provide the inmate with a copy of this form as a record of receipt.

**Grievance:** I am writing grieving the fact that NYC Docs and the City of new york has not taken any preventive messeries to protect me from transmitting and catching Covid 19 even though Docs has knowledge that I am high risk due to preram respertory health issues such as my tolpa asthma and the infection i gallbladder that stopped me from Breathing 2 twice i 2020 till for

**Action Requested by Inmate:** to be released under the N.Y.S states stop MDC officuals from retaliateity + trying to kill me

Medical records available upon request

**Please read below and check the correct box:**

| | Yes | No |
|---|---|---|
| Do you agree to have your statement edited for clarification by OCGS staff? | ☐ | ☒ |
| Do you need the OCGS staff to write the grievance for you? | ☐ | ☒ |
| Have you filed this grievance with a court or other agency? | ☐ | ☒ |
| Did you require the assistance of an interpreter? | ☐ | ☒ |

Inmate's Signature: *[signature]*

Date of Signature: March 27 2020

### FOR DOC OFFICE USE ONLY

OCGS MUST PROVIDE A COPY OF THIS FORM TO THE INMATE AS A RECORD OF RECEIPT.

THIS FORM IS INVALID UNLESS SIGNED BY THE INMATE AND GRIEVANCE COORDINATOR

| TIME STAMP | Grievance Reference #: 298306 | Category: Non-Grievable - Staff Complaint |
|---|---|---|
| | Office of Constituent and Grievances Services Coordinator/Officer Signature: C/O Williams 11351 | |

EXHIBIT - M

JULIE A. CLARK, ESQ.
32 Court Street, suite 707
Brooklyn, New York 11201
917-309-9862
718-625-6888
Jcw24@aol.com

July 18, 2020

NYC  Department of Corrections
Legal Department
75-20 Astoria Blvd.
East Elmhurst, NY 11370

Re:  Alexander Williams
      Book and Case # 141-18-01632  NYSID # 01897858L

Dear Sir or Madam:

   I am the attorney for Alexander Williams.  I am following up on complaints that have been lodged on his behalf as well as commencing a new complaint.

   I have attached the grievances and complaints that were lodged since January of 2020 and have only received a perfunctory response on April 8, 2020 that it has been forwarded to the appropriate unit.  There has not been a response to date.

   The grievances relate to medical issues that Mr. Williams is experiencing and the lack of an adequate response by the Correctional facility.  Mr. Williams suffers from respiratory problems that are being exacerbated by the facility and are not being properly treated.

   Further, Deputy Hardy at the Manhattan Detention Center has signaled out my client and is harassing him.  She has also indicated that she will put a "case" on him so that he receives additional charges and has his privileges taken away.  This behavior must stop immediately.

   In addition, we do not want any retaliatory action by any corrections officer against Mr. Williams because he is making a complaint.

   Please investigate this matter and the previous matters and contact us immediately.  Thank you.  We await your response.

Yours,

Julie Clark

EXHIBIT - N

 **Gmail**

Crystal Williams <tlcvisionary@gmail.com>

---

## [Fwd: ##301043## : City of New York - Correspondence #1-1-9332080 Message to Agency Head, DOC - Other]

1 message

---

**Service Desk** <servicedesk@doc.nyc.gov>
To: tlcvisionary@gmail.com

Wed, Apr 8, 2020 at 7:27 PM

Good day,

The New York City Department of Correction received your below correspondence. The details of your correspondence have been forwarded to the appropriate unit within the agency for further investigation.

Thank you for contacting the NYC Department of Correction.

Office of Constituent and Grievance Services

NYC Department of Correction

Requester : agencymail
Due by time : Apr 15, 2020 07:23 PM
Category : Constituent & Grievance
Description :
Below is the result of your feedback form.  It was submitted on Wednesday 8th of April 2020 06:18:24 PM

---------------------------------------------------------------

This form resides at
https://gcc02.safelinks.protection.outlook.com/?url=https%3A%2F%2Fwww1.nyc.gov%2F2Fsite%2Fdoc%2Fabout%2Fcontact-the-commissioner.page&amp;data=02%7C01%7Cagencyincoming%40customercare.nyc.gov%7C6ad5a01c0c0543f085be08d7dc0ac1f9%7C73d61799c28440228d4154cc4f1929ef%7C0%7C0%7C637219811067627010&amp;sdata=%2BSJVap6dIzrSgDj%2F9JwZGkh5ZM%2BmlhWCWQH80VIXwnE%3D&amp;reserved=0

---------------------------------------------------------------

Form: Customer Comment

Organization Name: DOC

Message Type: Complaint

Topic: Other

Message: Hello,

My husband Alexander Williams 141801632 is currently in Manhattan Detention Complex and is suffering with the current conditions as of this afternoon. He has a headache, sore throat, runny nose diarrhea,and body aches. He requested for medical and they are refusing stating he has to call a number for medical. His Book and Case Number are restricted so it will not let him call out. He is already at high risk due to his asthma and liver mass and gallstones. This is unfair treatment as he needs medical attention and no one is assisting him. Below are the grievances he already has against the jail. If anyone can assist in this matter and bring awareness I would greatly appreciate it.

Grievance # 281259 1/21/2020: While returning from court Alexander Williams had a medical emergency and stopped breathing and he started back breathing. After this happen Emergency responded in one hour.

Grievance #295244 3/12/2020-Feeling sick, heart hurting, difficulty breathing and cold chills no response was received.

Grievance #298306 filing due to not taking any preventive measures while COVID19 is happening due to his respiratory issue. Alexander was schedule to have surgery due to Cholecysitits and on hold due to COVID-19.

I can be reached by email or at 347-941-6436

I would like to: enter my contact information below

Prefix:

First Name: Crystal

Mi:

Last Name: Williams

Suffix:

Company:

Street Address: 304 Lyme Court

Apt /Suite:

City: Raleigh

State: NC

Country: United States

Postal Code: 27609

Phone: 3479416436

Extension:

Email Address: tlcvisionary@gmail.com

---------------------------------------------------------------------

REMOTE_HOST: 104.112.235.151
HTTP_ADDR: www1.nyc.gov
HTTP_USER_AGENT: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/80.0.3987.149 Safari/537.36

This e-mail, including any attachments, may be confidential, privileged or otherwise legally protected. It is intended only for the addressee. If you received this e-mail in error or from someone who was not authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments. Please notify the sender immediately by reply e-mail and delete the e-mail from your system.

Click for details : http://servicedesk-p1/WorkOrder.do?woMode=viewWO&woID=301043

EXHIBIT - O

**NYC HEALTH+ HOSPITALS** | Correctional Health Services

# HEALTH SERVICE UPDATE

## NEED:

## A CLINIC OR DENTAL APPOINTMENT? MEDICATIONS? GLASSES?

Use the phone in your housing area and **enter your PIN then press 614#** to speak with a nurse about your health issues or leave a message.

Give your **name**, **housing area**, and **book & case number** when you call.

Nurses can answer calls weekday mornings from 5am-12pm (except holidays).

In case of an **emergency**, please **contact DOC**.

## NEW CLINIC HOURS:

Appointments are from 10am-10pm.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Alexander Williams Jr
**(full name of the plaintiff/petitioner)**

-against-

20-cv-0516 (MKV)
**(Provide docket number, if available; if filing this with your complaint, you will not yet have a docket number.)**

The City of New York
et Al
**(full name(s) of the defendant(s)/respondent(s))**

## PRISONER AUTHORIZATION

By signing below, I acknowledge that:

(1) because I filed this action as a prisoner,[1] I am required by statute (28 U.S.C. § 1915) to pay the full filing fees for this case, even if I am granted the right to proceed *in forma pauperis* (IFP), that is, without prepayment of fees;

(2) the full $350 filing fee will be deducted in installments from my prison account, even if my case is dismissed or I voluntarily withdraw it.

I authorize the agency holding me in custody to:

(1) send a certified copy of my prison trust fund account statement for the past six months (from my current institution or any institution in which I was incarcerated during the past six months);

(2) calculate the amounts specified by 28 U.S.C. § 1915(b), deduct those amounts from my prison trust fund, and disburse those amounts to the Court.

This authorization applies to any agency into whose custody I may be transferred and to any other district court to which my case may be transferred.

Jan 1 2020
**Date**

**Signature**

Williams Alexander
**Name (Last, First, MI)**

1411801672
**Prison Identification #**

125 White St    N.Y    N.Y    10013
**Address**    **City**    **State**    **Zip Code**

---

[1] A "prisoner" is "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms or conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915(h).

SDNY Rev. 10/26/16

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

Alexander Williams

(full name of the plaintiff or petitioner applying (each person
must submit a separate application))

-against-

CV ( ) ( )

(Provide docket number, if available; if filing this with
your complaint, you will not yet have a docket number.)

The City of New York
et Al

(full name(s) of the defendant(s)/respondent(s))

## APPLICATION TO PROCEED WITHOUT PREPAYING FEES OR COSTS

I am a plaintiff/petitioner in this case and declare that I am unable to pay the costs of these proceedings
and I believe that I am entitled to the relief requested in this action. In support of this application to
proceed *in forma pauperis* (IFP) (without prepaying fees or costs), I declare that the responses below are
true:

1. *Are you incarcerated?*  ☒ Yes  ☐ No  (If "No," go to Question 2.)
   I am being held at:  Manhattan Detention Complex

   Do you receive any payment from this institution? ☒ Yes  ☐ No

   Monthly amount:  $ 42

   If I am a prisoner, *see* 28 U.S.C. § 1915(h), I have attached to this document a "Prisoner Authorization"
   directing the facility to deduct the filing fee from my account in installments
   and to send to the Court certified copies of my account statements for the past six months. *See* 28
   U.S.C. § 1915(a)(2), (b). I understand that this means that I will be required to pay the full filing fee.

2. Are you presently employed?  ☐ Yes  ☒ No

   If "yes," my employer's name and address are:

   Gross monthly pay or wages:  NA

   If "no," what was your last date of employment?  NA

   Gross monthly wages at the time:  NA

3. In addition to your income stated above (which you should not repeat here), have you or anyone else
   living at the same residence as you received more than $200 in the past 12 months from any of the
   following sources? Check all that apply.

   (a) Business, profession, or other self-employment  ☐ Yes  ☒ No
   (b) Rent payments, interest, or dividends  ☐ Yes  ☒ No

(c) Pension, annuity, or life insurance payments      ☐ Yes    ☑ No

(d) Disability or worker's compensation payments    ☐ Yes    ☑ No

(e) Gifts or inheritances      ☐ Yes    ☑ No

(f) Any other public benefits (unemployment, social security, food stamps, veteran's, etc.)    ☐ Yes    ☑ No

(g) Any other sources      ☐ Yes    ☑ No

If you answered "Yes" to any question above, describe below or on separate pages each source of money and state the amount that you received and what you expect to receive in the future.

NA

If you answered "No" to all of the questions above, explain how you are paying your expenses:

NA   I Have none

4. How much money do you have in cash or in a checking, savings, or inmate account?

5. Do you own any automobile, real estate, stock, bond, security, trust, jewelry, art work, or other financial instrument or thing of value, including any item of value held in someone else's name? If so, describe the property and its approximate value:

NO

6. Do you have any housing, transportation, utilities, or loan payments, or other regular monthly expenses? If so, describe and provide the amount of the monthly expense:

NO

7. List all people who are dependent on you for support, your relationship with each person, and how much you contribute to their support (only provide initials for minors under 18):

Jaeylan mccray

8. Do you have any debts or financial obligations not described above? If so, describe the amounts owed and to whom they are payable:

NO

*Declaration:* I declare under penalty of perjury that the above information is true. I understand that a false statement may result in a dismissal of my claims.

Jan 1 2020
**Dated**

*Signature*

Williams Jr Mexaner
**Name (Last, First, MI)**

141801632
**Prison Identification # (If incarcerated)**

125 white St
**Address**

Ny
**City**

Ny
**State**

10013
**Zip Code**

**Telephone Number**

**E-mail Address (If available)**

IFP Application, page 2

ALEXANDER  WILLIAMS JR  141·180·1632
MANHATTAN DETENTION COMPLEX
125 WHITE STREET
NEW YORK NY 10013

OCTOBER 1 2020

HONORABLE MARY KAY VYSKOCIL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF NEW YORK
500 PEARL STRET
NEW YORK N10007

RE: <u>WILLIAMS V. CITY OF NEW YORK ET AL.</u>
    20-CV-0516   (MKV)

DEAR JUDGE VYSKOCIL:

After  reviewing the Court Docket  on the above mentioned case number
I was able to  see the  defendants motion dated Jnue 30 2020 requesting
dismissal on serveral grounds.

Enclosed is an amended complaint making the corrections the I
belived where addressed in the defendnats request for dismiss.

I further  ask the Court for guidence understanding  Fed R. Civ.
P. 20(a0, whereas when i reserached this  statue using the facility law
library the understanding  I recived was that I must ask the court permssion
to  jointly and/or join  all the defendants in my compliant before just
submitting the suit.

If that is the case I am herein this letter/motion asking the
court permission to submit this complaint jointly aginst the defendnats
named herein

I also would like to ask the courts to redact any/all  exhibits
that display any of my medical records, menatal health records and hospital
trip records in refference to  personal informtion such as name, B&C number,
home address, age, and/or social security number as well as the personal
infocmation of my wife Mrs Crystal Williams that is visible in Exhibit
-N of this amended complaint before it is made public and/ or given to

the defendnats and their respective counsels.

I would also like to remind the Court that I am moving pro-se in this matter and that I am a layman of the Law and continue to seek the Courts guidence in request extended time in matters where I may have to corect, modify, and/or amend motions going forward.


RESPECTFULLY SUBMITTED

ALEXANDER WILLIAMS JR



Oakland
120 ee
New Y

United States District Court
Southern District of New York
PRO-Se Intake Unit
500 Pearl Street
New York NY 10007

Legal mail    confidential