```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/20/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALEXANDER WILLIAMS JR.,

                Plaintiff,

-against-

THE CITY OF NEW YORK; ADW ELYN RIVERA, Shield No. 576; CAPTAIN JOHN HERNANDEZ, Shield No. 1806; DR. DEBRA MAYERS; IRA GORNISH; TERESA CUADRA; HESTER MOULTON; BESSIE FLORES-CLEMENTE; JUSTIN WILSON; LAURA HUNT; CAROLYN DICKIE; CORRECTIONAL HEALTH SERVICES,

                Defendants.

1:20-cv-516 (MKV)

ORDER GRANTING MOTION TO DISMISS

MARY KAY VYSKOCIL, United States District Judge:

This case is before the Court on a Motion to Dismiss. Plaintiff Alexander Williams has filed an initial Complaint [ECF No. 2], an Amended Complaint [ECF No. 20], and with leave filed a Second Amended Complaint. [ECF No. 29]. The Second Amended Complaint alleges violations of his constitutional rights with respect to his pre-trial detainment by Defendants Assistant Deputy Warden Elyn Rivera (Shield No. 576), Captain John Hernandez (Shield No. 1806), Dr. Debra Mayers, Ira Gornish, Teresa Cuadra, Hester Moulton, Bessie Flores-Clemente, Justin Wilson, Laura Hunt, Carolyn Dickie (the "Individual Defendants") and the City of New York and the New York City Health & Hospitals Corporation Correctional Health Service (collectively, "Defendants"). Defendants filed a Motion to Dismiss the Second Amended Complaint [ECF No. 34], and a Memorandum in Support ("Defs.' Mem." [ECF No. 35]). Plaintiff lodged his opposition ("Pl.s' Opp." [ECF No. 39]), and Defendants subsequently filed their Reply [ECF No. 42]. For the reasons set forth below, Plaintiff has failed to state a claim, and accordingly the Court GRANTS Defendants' Motion to Dismiss.

1

## BACKGROUND

As it must, the Court looks at the facts in the light most favorable to the non-moving party, here Plaintiff. From April 2019 to December 2019, Plaintiff was a pretrial detainee at the Manhattan Detention Complex. *See* Compl. ¶ 2. Plaintiff alleges that during that period Defendants violated his constitutional rights by disclosing his medical information, denying him medical care, and violating his right to privacy. Am. Compl. ¶¶ 1-37.

**A. Alleged Denial of Medical Care and Access**

While at the Manhattan Detention Complex, Plaintiff made a number of requests to be seen by health care professionals for various medical issues. In mid-February 2019, Plaintiff was seen for stomach pain. Am. Compl. ¶ 17. At that time, Plaintiff was informed that the pain was "epigastric pain," and was provided with a prescription. Am. Compl. ¶ 17. In a follow-up examination a week later, Plaintiff complained to Defendant Bessie Flores-Clemente that the medication was not working. Am. Compl. ¶ 18. He was told that the medicine may take time to work, and that he still had almost a month left before his prescription would run out. Am. Compl. ¶ 18. On March 2, 2019, Plaintiff complained to another doctor that he was experiencing abdominal pain and vomiting. Am. Compl. ¶ 19. Plaintiff was taken to an examination room where he was further examined and prescribed additional medicine. Am. Compl. ¶ 19. Five days later, Defendant Bessie Flores Clemente again saw Plaintiff who complained that his medicine was not helping. Am. Compl. ¶ 19. At that time, Plaintiff was informed that his symptoms were consistent with heartburn and was prescribed heartburn medication. Am. Compl. ¶ 19. On March 12, 2019, the Plaintiff saw Defendant Ira Gornish who diagnosed him with "gastro-esophageal reflux disease," and instructed him to continue taking his medicine. Am. Compl. ¶ 21. On March 23, 2019, Plaintiff had an annual physical which identified no further issues. Am. Compl. ¶ 22.

In December 2019, Plaintiff complained that his stomach pain was severe. Am. Compl. ¶ 22. Plaintiff was seen by emergency doctors who prescribed Tylenol. Am. Compl. ¶ 22. While he was returning to his cell, Plaintiff "collapse[d] and fainted." Am. Compl. ¶ 23. He was then kept for observation for a few hours before returning to his cell that same night. Am. Compl. ¶ 24. Five days later, Plaintiff "began to experience shooting pain, vomiting, and los[s] of breath." Am. Compl. ¶ 25. Defendant John Hernandez carried him out of his cell and Plaintiff was transported for treatment to New York Presbyterian Hospital. Am. Compl. ¶¶ 25-26. At the hospital, Plaintiff was diagnosed with "numerous gallstones." Am. Compl. ¶ 27. Though his gallbladder needed to be removed, the surgery could not be performed due to inflammation. Am. Compl. ¶ 28. Plaintiff was released back to prison two days later with instructions to follow a low-fat diet and to schedule surgery. Am. Compl. ¶ 29.

### B. Alleged Disclosures of Plaintiff's Medical Information

Plaintiff alleges that during the time period that he was at the Manhattan Detention Complex, Defendants disclosed his medical information to other individuals. For example, Plaintiff alleges that on April 22, 2019, Plaintiff requested medical assistance from Defendant Carolyn Dickie. Am. Compl. ¶ 3. Instead of bringing Plaintiff to an examination room, Dickie went over Plaintiff's chart with him in front of a correctional officer and "all the other inmates that were on their doors listening awaiting to request medical attention." Am. Compl. ¶ 3. Plaintiff makes substantially similar allegations against Defendants Laura Hunt, Justin Wilson, Bessie Flores Clemente, Ira Gornish, and Hester Moulton, all of whom allegedly discussed with Plaintiff his medical information within earshot of others on at least twelve other occasions. Am. Compl. ¶¶ 4-15.

### C. Alleged Denial of Privacy

Plaintiff further alleges that on at least six occasions a camera observed him during a medical examination. Am. Compl. ¶¶ 30-36. Plaintiff knew that he was being observed because he would notice that a camera lens would begin to zoom, and it would frequently coincide with when he removed his clothing. *See* Am. Compl. ¶ 34.

## **LEGAL STANDARD**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal for "failure to state a claim upon which relief can be granted," is proper unless the complaint "contain[s] sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the factual content pleaded allows a court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 679. "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

Where, as here, the party is representing himself *pro se*, the complaint is "interpret[ed] . . . to raise the strongest [claims] that [it] suggest[s]." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks omitted). "However, although *pro se* filings are read liberally and must be interpreted to raise the strongest arguments they suggest, a *pro se* complaint must still plead sufficient facts to state a claim to relief that is plausible on its face." *Wilder v. United States Dep't of Veterans Affairs*, 175 F. Supp. 3d 82, 87 (S.D.N.Y 2016) (internal citation and quotations omitted). "[T]hreadbare receitals of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

4

**DISCUSSION**

Plaintiff alleges a host of purported violations of federal law. Plaintiff claims six separate purported causes of action in his Amended Complaint. *See* Am. Compl. ¶¶ 45-73. *First*, Plaintiff brings a Section 1983 case against all Defendants for denying adequate medical care. Am. Compl. ¶¶ 45-48. *Second*, Plaintiff brings a "municipal liability" claim against the City of New York and Correctional Health Services for instituting a policy whereby Plaintiff was denied access to medical care. Am. Compl. ¶¶ 49-56. Plaintiff also asserts in this count violations relating to "retaliation," an Eighth Amendment cruel and unusual punishment claim, an Equal Protection claim, and the right to privacy in medical information. Am. Compl. ¶ 56. *Third*, Plaintiff alleges violations of "due process" and the Fourteenth Amendment against all Defendants with respect to his right to privacy in medical records, mental health records, and his right to medical care. Am. Compl. ¶¶ 57-63. *Fourth*, Plaintiff alleges that the City of New York is negligent for hiring and retaining the Individual Defendants, and that the Individual Defendants are responsible "for creating, using, [and] implementing policies that are in conflict with minimum standards." Am. Compl. ¶¶ 64-66. *Fifth*, Plaintiff maintains that the City of New York was negligent in its training and supervision of its employees. Am. Compl. ¶¶ 67-69. Finally, Plaintiff brings a *respondeat superior* claim against the City of New York for the acts of its employees "who were on duty and acting in the scope of their employment while they engaged in the wrongful[] conduct." Am. Compl. ¶¶ 70-72. While these are the only causes of action that Plaintiff directly asserts, Plaintiff additionally mentions an invasion of privacy claim, Am. Compl. ¶¶ 30-35, and a Fourth and Sixth Amendment injury in a bullet point in Paragraph 73 of the Amended Complaint, as well as alleged retaliation for bringing this case and other litigation.

Attempting to distill these "claims" and construing them liberally, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006), Plaintiff essentially brings a Section 1983 claim against all Defendants for disclosing his medical records and invading his privacy, and for deliberate indifference in providing him medical care.  Plaintiff also alleges a *Monell*[1] claim for municipal liability against the City of New York and Correctional Health Services for instituting a policy whereby he was denied medical care, a claim for "retaliation," and a claim for purported Eighth Amendment violations.  Finally, Plaintiff further alleges that under *Monell*, the City of New York is liable for hiring and training the Individual Defendants, who purportedly enacted policies whereby his rights were violated.

### A. Plaintiff's Claims Against the Individual Defendants Do Not Plausibly State a Claim Entitling Him to Relief

Plaintiff brings a *Section 1983* claim against all Defendants for violations of "due process" and the Fourteenth Amendment with respect to his right to privacy in medical records, mental health records, bodily privacy, and his right to medical care.  To determine whether a constitutional violation has occurred, a court must first identify the right at stake.  *Hanckock v. Cty. Of Rensselaer*, 882 F.3d 58, 64 (2d Cir. 2018).

#### 1. *Plaintiff Fails to State a Claim with Respect to Disclosure of his Medical Information and Violation of his Right to Privacy*

"The Supreme Court has long implied that the zone of privacy protects 'the individual interest in avoiding disclosure of personal matters.'"  *Hancock*, 882 F.3d at 65 (quoting *Whalen v. Roe*, 429 U.S. 589, 599 (1977)).  This includes the right to privacy in medical records.  *Id.*

---

[1] Discussed *infra* Section B, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) permits a Section 1983 claim against a municipality, or city officials in their official capacity, if an official policy or custom constitutes a constitutional violation.

"Although it is fundamental, the constitutional right to privacy is not absolute." *Id.* Instead, a "constitutional violation only occurs when the individual's interest in privacy outweighs the government's interest in breaching it." *Id.* In the context of incarcerated individuals, "prison officials can impinge on that right only to the extent that their actions are reasonably related to legitimate penological interests." *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999).

All instances of alleged violation of Plaintiff's right to privacy with respect to his medical records are based on the disclosure of his information near others during consultation with Plaintiff for purposes of assessment. *See* Am. Compl. ¶¶ 1-15. "[T]he Constitution does not guarantee that a medical examination of a prisoner must be conducted in private." *Pena v. Downstate Correctional Facility Medical Department*, 2020 WL 1467372, at *3 (S.D.N.Y. Mar. 25, 2020). To be actionable, disclosure of Plaintiff's medical information must have been "gratuitous." *Powell*, 175 F.3d at 112. That is not the case here, where any disclosure by the Individual Defendants occurred during conversations that took place for the purpose of assessing Plaintiff's health and responding to his inquiries. *See* Am. Compl. ¶¶ 1-15. Any disclosures of his health-related information was reasonably related to legitimate penological interests in determining his condition and evaluating whether further treatment was necessary. *See Rodriguez v. Heit*, 2018 WL 3121626, at *6 (N.D.N.Y. Mar. 30, 2018) (a correction officer's presence in the examination room, and a nurse's statements to the officer during a medical exam did not violate the prisoner's right to privacy); *Rodriguez v. Ames*, 287 F. Supp. 2d 213, 219 (W.D.N.Y. 2003) (a cellmate's presence during examination did not constitute a constitutional violation).

Plaintiff further alleges in his Amended Complaint that during medical visits cameras above him seemed as if they were zooming in on him. *See* Am. Compl. ¶¶ 30-35. "A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984). Thus, to "state a cognizable privacy claim, an inmate must allege that (1) he 'exhibited an actual, subjective expectation of bodily privacy,' and (2) prison officials lacked 'sufficient justification to intrude on the inmate's [F]ourth [A]mendment rights.'" *Telesford v. Annucci*, 693 Fed. Appx. 1, 2-3 (2d Cir. 2017) (quoting *Hudson*, 468 U.S. at 527-28). The allegation that cameras existed in the examination room which may have been used to observe Plaintiff is insufficient to establish a violation of his "limited right to bodily privacy." *Covino v. Patrissi*, 967 F.2d 73, 29 (2d Cir. 1992); *Roundree v. City of New York*, 2018 WL 1586473, at *12 (S.D.N.Y. Mar. 27, 2018) (stating "there is no expectation of privacy in showers, clinics, or other areas in which prison officials routinely monitor and search prisoners."). Prison presents "many unfortunate and embarrassing circumstances [that] prisoners must endure as part of their daily lives." *Rodriguez*, 287 F. Supp. 2d at 220-21). Such circumstances are critical to prison security, ever-present cameras being among them. Plaintiff provides no further facts in support of his privacy claim beyond a camera in a room that allegedly moved, nor does he identify any individual Defendant who was involved in the surveillance. His generalized and conclusory allegations therefore are not "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, any claim for privacy asserted, either in terms of medical records or bodily privacy, fails to plausibly state a claim.

### *2. Plaintiff Fails to State a Claim with Respect to Violation of his Right to Medical Care*

"To establish a claim for deliberate indifference to medical needs under the Due Process Clause of the Fourteenth Amendment, a pre-trial detainee must establish two elements: (1) that the 'deprivation of medical care . . . [was] sufficiently serious,' and (2) that the defendant 'acted or failed to act with a sufficiently culpable state of mind.'" *Lara-Grimaldi v. Cty of Putnam*, 2021 WL 1199187, at *10 (S.D.N.Y. Mar. 29, 2021) (quoting *Smith v. Outlaw*, 2017 WL 4417699, at *2 (S.D.N.Y. Sept. 30, 2017)); *see also Charles v. Orange Cty.*, 925 F.3d 73, 86-87 (2d Cir. 2019). "The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal citation and quotations omitted). The second requirement is the "mens rea prong," *Darnell v. Pineiro*, 849 F.3d at 29, and the "pretrial detainee must prove that the [Defendants] acted intentionally" to deprive adequate medical care "or recklessly failed to act with reasonable care . . . even though [Defendants] knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. The Court makes "this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Thus, in sum, a "detainee must prove that an official acted intentionally or recklessly, and not merely negligently." *Darnell*, 849 F.3d at 36.

Defendants' moving papers focus on whether Defendants acted with a sufficiently culpable state of mind. Defs.' Mem. at 11-13. Plaintiff concedes that every time that he complained of a medical issue, he was assessed and prescribed medication. Am. Compl. ¶¶ 17-29. At times, officials had Plaintiff stay for medical observation to further assess his complaints and the course of action. Am. Compl. ¶ 22. When Plaintiff had more serious medical issues months after his initial complaints, it was determined that Plaintiff needed hospitalization and he

9

was promptly transferred to the New York Presbyterian Hospital, where his condition was diagnosed and was then discharged for further care.  Am. Compl. ¶¶ 25-28, Ex. G.

Plaintiff does not allege facts sufficient to demonstrate that any Defendant, or any other individual with whom he interacted, acted with deliberate indifference to his health.  At every turn, Plaintiff states that his complaints were met with a medical assessment and treatment.  *See, e.g.* Am. Compl ¶17-29.  Although Plaintiff made complaints about stomach issues earlier in the year, Plaintiff does not allege that he continued to have health issues in the ensuing months.  More than eight months passed between when Plaintiff last complaint and the medical problem that resulted in his being hospitalized.  *See* Am. Compl. ¶ 22 (Plaintiff last complained in March and went to the hospital in December).  Thus, even assuming Plaintiff's gastrointestinal complaints could have amounted to a "sufficiently serious" injury, it cannot plausibly be inferred that Defendants acted with "intentional[] or reckless[]" indifference to Plaintiff's health, because at the end of each complaint, he was evaluated and treated.  *Darnell*, 849 F.3d at 36; *Muhammad v. Cohen*, 2015 U.S. Dist. LEXIS 58001, 2015 WL 1973330, at *9 (S.D.N.Y. May 1, 2015) (no deliberate indifference where "plaintiff received significant medical attention and treatment" and "prescription[s] for pain medication"); *Hernandez v. Corizone Med. Dept. Staff*, 2015 U.S. Dist. LEXIS 7361, 2015 WL 273690, at *3 (S.D .N.Y. Jan. 22, 2015) (no deliberate indifference where plaintiff "describe[d] a series of visits to doctors" and "state[d] that he was treated and prescribed various medications as a result."); *see also Charles*, 925 F.3d at 87 (stating "mere medical malpractice is not tantamount to deliberate indifference.).  Plaintiff's claim for deliberate indifference to his medical needs must therefore fail.

### B. Plaintiff Fails to Plead a Valid *Monell* Claim or Otherwise State a Valid Claim Against the City

Plaintiff alleges claims against the City of New York and Correctional Health Services for negligence in hiring the Individual Defendants, and negligence in training and supervising Individual Defendants. Am. Compl. ¶¶ 49-56. Plaintiff further asserts that the City of New York and Correctional Health Services, in addition to the Individual Defendants in their individual capacity, implemented a policy or custom that violated his constitutional rights. Am. Compl. ¶¶ 64-66.

Under the Supreme Court's decision in *Monell v. Department of Social Service*, local governments and individuals in their official capacity may be held liable in Section 1983 actions when it can be shown that "the denial of a constitutional right [] was caused by an official municipal policy or custom." *Bellamy v. City of New York*, 914 F.3d 727, 756 (2d Cir. 2019). "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *Askins v. Doe*, 727 F.3d 248, 253 (2d Cir. 2013). As discussed above, Plaintiff has not shown any constitutional violations under the Fourteenth Amendment Due Process Clause.

To the extent that the Plaintiff's allegations are an attempt to plead an Eighth Amendment claim, *see* Am. Compl. ¶ 56, those claims fail as a matter of law. A "pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment" because "'[p]retrial detainees have not been convicted of a crime and thus may not

11

be punished in any manner—neither cruelly and unusually or otherwise.'" *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007)).

Plaintiff's retaliation claim also fails. To state a First Amendment retaliation claim, Plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that . . . defendant took adverse action against . . .[him], and (3) that there was a causal connection between the protected conduct and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014). The Court approaches "prisoner retaliation claims with skepticism and particular care." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (internal quotation marks omitted). While the filing of lawsuits is a constitutionally protected activity, *id.* at 294, Plaintiff cannot show a causal connection between that protected conduct and any adverse action. In his Second Amended Complaint Plaintiff has added allegations that after filing this suit and litigation in "other cases," he was denied a correct diet, Am. Compl. ¶ 38, he was made to sit in a transport van for an hour and a half, Am. Compl. ¶ 39, not permitted to go to the sick bay, Am. Compl. ¶¶ 40-41, and that he was not issued a mask, Am. Compl. ¶ 43. At the same time, Plaintiff admits, however, that he *is* permitted to visit doctors when necessary. Am. Compl. ¶ 44. Significantly, even if the Plaintiff's complaints could be seen as "adverse action," Plaintiff wholly fails to connect any of his allegations to any person who had knowledge of his lawsuits. Plaintiff's retaliation allegation therefore fails to state a claim upon which relief can be granted. *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y 2011) (plaintiff failed to provide basis to believe defendant would retaliate for a grievance in which he was unnamed and of which he was unaware).

Because Plaintiff cannot establish that the Defendants' actions constituted a violation of any constitutional right, Plaintiff's *Monell* claims for violation of his rights, and negligent hiring,

training, or supervision, fail as a matter of law. *Segal*, 459 F.3d at 219; *Askins*, 727 F.3d at 253.[2] Finding no constitutional violation, the Court need not address Defendants' claim for qualified immunity. Defs.' Mem. at 13.

### C. Plaintiff's State-Level Medical Malpractice Claims

The Court's jurisdiction in this case is predicated upon violation of Plaintiff's federal Constitutional rights. It does not appear that diversity jurisdiction exists in this case. Plaintiff was in New York at the time of the events that give rise to his claims, and he has not pleaded facts about his domicile before he was detained and later incarcerated. Nor has Plaintiff pleaded facts about the domicile of any other party. Thus, Plaintiff has not demonstrated complete diversity of citizenship between the Parties. *See Liverpool v. City of New York*, 2020 U.S. Dist. LEXIS 123534, at *8 (S.D.N.Y. July 13, 2020). To the extent that Plaintiff's Amended Complaint asserts a claim for a medical malpractice claim under state law, *see* Defs.' Mem. at 17-18, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) over Plaintiff's state law claims since the Court "has dismissed all claims over which it has original jurisdiction." *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998).

## CONCLUSION

For the foregoing reasons, Defendant has demonstrated that Plaintiff fails to state a claim upon which relief can be granted. Accordingly, Defendants' Motion to Dismiss is GRANTED.

**SO ORDERED.**

Date: September 20, 2021      **MARY KAY VYSKOCIL**
New York, NY      **United States District Judge**

---

[2] To the extent that Plaintiff raises any Sixth Amendment violation, the facts are devoid of anything which would support that claim, and Plaintiff fails to address this claim in his Opposition.